# Commonwealth v. Pottsville Iron and Steel Co., Appellant.

*Taxation—Manufacturing corporation—Mining—Act of June 1, 1889.*

A corporation organized under the act of April 29, 1874, P. L. 73, to "dig iron ore, build and operate furnaces, forges, manufactories, rolling mills, and manufacture machinery, and other manufactures of iron and steel," which invests all its capital in manufacturing and does not engage in mining, is entirely exempt from taxation by the commonwealth under the act of June 1, 1889, § 21, P. L. 431. Com. v. Westinghouse Mfg. Co., 151 Pa. 265, distinguished.

The mere possession of an ancillary power which a manufacturing corporation has never used or sought to use, which it had express legislative permission to hold, and which was intended for use only in aid of its manufacturing enterprises, does not change the character of the corporation or deprive it of its privileges and immunities as a manufacturing corporation. The use of the word "exclusively" in the act of 1889 does not change the rule.

Argued May 30, 1893. Appeal, No. 10, May T., 1893, by defendant, from judgment of C. P. Dauphin Co., June T., 1893, No. 39, for Commonwealth, on appeal from tax settlement. Before STERRETT, C. J., GREEN, WILLIAMS, MITCHELL, DEAN and THOMPSON, JJ.

Appeal from tax settlement.

The case was tried by the court without a jury, who found the facts as follows in an opinion by SIMONTON, P. J.:

"(1) The Pottsville Iron & Steel Company, defendant, has a capital stock of $450,000. It paid no dividends during the tax years 1890 and 1891, and its proper officers made and returned to the auditor general for each of said years a valuation of the capital stock at par, or $450,000. The auditor general thereupon settled and entered, and the state treasurer approved, an account for tax for said years, charging tax at three mills upon the appraised value of the stock for each of said years, the tax amounting to $1,350 for each year, or $2,700 for the two years. From the account so settled, entered and approved, the company duly appealed to this court.

"(2) Defendant was chartered under clause 17 of section 2 of the General Corporation Act of 1874, which provides for the incorporation of companies for 'the manufacture of iron or steel,

or both, or of any other metal, or of any article of commerce from metal or wood, or both.' Section 38 of said act provides that:

" ' Companies incorporated under the provisions of this act for the manufacture of iron or steel, or both, or of any other metal, or of any article of commerce from wood or metal, or both, unless otherwise provided by this act, shall, from the date of the letters patent creating the same, have the powers and be governed, managed and controlled as follows:

" ' Clause 1. Every such corporation may, in the manner prescribed in this act, increase its capital stock to an amount not exceeding five million dollars, and shall have the right to purchase, lease, hold, mortgage and sell real estate and mineral rights, to prove and open mines, to mine and prepare for market, or for their own use and consumption, coal, iron ore and other minerals, and to erect and construct furnaces, forges, mills, foundries, manufactories and such other improvements and erections as they may deem necessary, and to manufacture iron and steel, or any other metal, or either thereof, in all shapes and forms, and either of these metals, exclusively or in combination with other metals or wood, and to transport all of said articles or any of them to market, and to dispose of the same, and to do all such other acts and things as a successful and convenient prosecution of said business may require ; Provided, They shall not at any one time have more than ten thousand acres of land within this commonwealth, including leased lands.'

" (3) In its application to the governor for charter the company set forth that its object in seeking incorporation was for the purpose of:

" ' Having the right to dig iron ore, build and operate furnaces, forges, manufactories, rolling mills, and to manufacture machinery and other manufactures of iron and steel, and to have and exercise all of the rights and privileges conferred by the act of April 29, 1874.'

" The company has no powers, privileges or franchises except such as are conferred by the General Corporation Act of 1874 upon all corporations chartered since the date of its passage for the manufacture of iron or steel.

" (4) The capital stock of the defendant company is now, and was in 1890 and 1891, invested exclusively in blast fur-

naces, rolling and steel mills fully equipped, and in sundry building, appertaining thereto, in which said blast furnaces, rolling and steel mills it was and is engaged in the manufacture of pig iron, railroad iron, steel beams, channels, bars, plates, etc., for structural purposes in the county of Schuylkill, employing constantly from 800 to 1200 men in said manufacturing business.

" (5) The defendant has never at any time exercised the right of eminent domain, nor engaged in the business of brewing or distilling spirits or malt liquors.

" (6) The defendant company is not and never has been engaged in any business other than that of manufacturing, as aforesaid. No part of its capital is invested in iron or coal land; it does not dig or mine iron ore or coal either to sell to others or for use in its own furnaces, but all of its capital is invested in its strictly manufacturing plant, property and business, and its corporate energies are confined exclusively to such manufacturing business.

" Upon the above facts defendant claims to be within the proviso of section 21 of the Revenue Act of 1889, which relieves from taxation upon their capital stock corporations 'organized exclusively for manufacturing purposes and actually carrying on manufacturing within the state,' and we should so hold were it not for the decision of the Supreme Court in Commonwealth v. Westinghouse Electric & Manufacturing Company, 151 Pa. 265, which, as we understand it, requires us to deny any exemption whatever to any corporation in whose charter we find a power, used or unused, to engage in any business other than manufacturing. In Com. v. Lackawanna Iron & Coal Co., 129 Pa. 346, it was held that the ownership of iron ore and coal properties and the mining of iron ore and coal for the supply of raw materials, while frequently convenient and desirable, were, nevertheless, not essential or legally incident to the business of manufacturing, and, as we find that the law under which defendant is incorporated and which constitutes its charter confers upon it authority to own coal and ore lands and mine coal and iron ore, we must hold that it is authorized to make investments and do things not absolutely essential to a manufacturing business, and that, therefore, within the ruling in the Westinghouse case, it is not entitled to exemption, but is taxable upon

its entire capital stock, although, as matter of fact, it is not engaged in any other business, and its whole capital is invested in manufacturing. But in so ruling we reiterate what was said by McPHERSON, J., in Commonwealth v. National Oil Co., 172 March term, 1892 [quoting the opinion as in the report of the case below, page 520, beginning at ' while '].

" We can hardly conceive that it was not in the minds of the legislators to exempt such a corporation as this. If it is to be taxed there is neither equity nor justice in exempting any other manufacturing corporation, and yet, for the reasons stated, and in obedience to the ruling in the Westinghouse case, we must hold, as a conclusion of law, that defendant is not organized exclusively for manufacturing purposes, and therefore, not entitled to any exemption whatever."

The court accordingly entered judgment for the amount of tax upon the entire capital. Defendant appealed.

*Error assigned* was in entering judgment as above.

*M. E. Olmsted* and *D. C. Henning* for appellant, cited: Com. v. Lackawanna Iron and Coal Co., 129 Pa. 346 ; Com. v. Westinghouse El. & Mfg. Co., 151 Pa. 265 ; Com. v. Northern Electric Light & Power Co., 145 Pa. 105 ; art. 9, § 1, of the Const.

*James A. Stranahan*, deputy attorney general, *W. U. Hensel*, attorney general, with him, for appellee, cited the same cases.

OPINION BY MR. JUSTICE WILLIAMS, October 2, 1893 :

The defendant company was incorporated under the provisions of the general law of 1874, P. L. 73. One section of that act gives to companies incorporated under it for the manufacture of iron and steel the right to hold mineral land and mine coal, iron and other minerals for their own use and for sale in market.

In the application to the governor for letters patent this company stated its objects to be to secure the right to " dig iron ore, build and operate furnaces, forges, manufactories, rolling mills and manufacturing machinery, and other manufactures of iron and steel, and to have and exercise all the rights and privileges conferred by the act of April 29, 1874." The right to

mine was conferred by the act 1874, and was applied for by the defendants, as ancillary to the business of manufacturing and not as an additional or alternate line of business to be pursued by the company at its own election. The findings of the learned judge of the court below show that the ancillary power thus provided by general law, and by the articles of incorporation, has never been used. It was conferred by the legal organization; but when the breath of life had been breathed into the new company its first work was to settle the character of its business organization and arrange its plant accordingly. In doing this it seems to have determined that its entire capital should be invested in, and devoted to, the business of manufacturing. It bought no mineral lands, and has at no time owned, leased, or operated any mine.

Upon these facts the question raised is whether this company is entitled to the exemption of its capital stock from taxation as a manufacturing company? The court below, with unconcealed reluctance, held that it was not, and placed its judgment on the recent case of Commonwealth v. The Westinghouse Manufacturing Company, 151 Pa. 265. An examination of that case convinces us that it does not rule this. Incorporation had been effected in that case not under the general law providing for the incorporation of manufacturing companies, but under one of those odious special charters, so frequently described as "omnibus charters." It was organized under the act of April 9, 1872, P. L. of 1873, 1096, entitled "An act to incorporate the Chartiers Improvement Company, and to define the powers thereof." These powers were defined by a reference to the act of May 12, 1871, P. L. 787, entitled "An act to incorporate the Improvement and Co-operation Company," etc. There is no hint of manufacturing in the title of either of these acts or in the body of them.

In the language of our Brother HEYDRICK, the grant of powers in these acts was "so vaguely defined that it would be unsafe to say what was not authorized, if anything could be authorized by such generalities, except the issue of its own obligations as currency which was expressly excluded, and manufacturing which the most liberal construction of the act of 1871 would not comprehend." The Westinghouse Company did not show therefore that it was ever organized as a manufactur-

ing company by the law creating it, or that it had by any distinct corporate act limited and defined the objects and purposes of its business organization. In this case the defendant company was organized under the law providing for the incorporation of manufacturing companies. The purpose of its creation was to engage in manufacturing. Its investments have been made and its business arranged and conducted for this single purpose from first to last. It is in name, in the nature of its corporate powers and characteristics, and in its actual business operations, a manufacturing company and nothing else. The mere possession of an ancillary power which it has never used or sought to use, which it had express legislative permission to hold, and which was evidently intended for use only in aid of its manufacturing enterprises, does not change the character of the corporation or deprive it of its privileges and immunities as a manufacturing corporation.

It is urged that the word " exclusively," which is found in the act of 1889 but was not found in that of 1885, requires us to draw a sharper line of demarkation between companies whose capital stock is exempt from taxation and those whose stock is subject to it, than has been heretofore drawn ; and subjects the entire capital of all manufacturing companies to taxation if, under a mistake about their rights, they have secured the grant of any ancillary privilege not absolutely indispensable to manufacturing. We are not prepared to assent to this proposition. It would seem that in the use of this word the legislature had the old system of omnibus legislation in mind, and intended to discriminate against that class of corporations organized under special charters granted before the present constitution was adopted. Charters were then granted and some of them are still in existence, conferring upon a single company the powers of a mining, a manufacturing and a transportation company. Such a charter was actually before the court in the Commonwealth v. Westinghouse Company, supra. The manufacturing which is done by such a company may be in aid of its mining or its transportation business. Such a company is not organized either as to its corporate powers, or its actual business, exclusively as a manufacturing company, and is entitled to no exemption upon its capital stock. Many railroad companies make engines and cars for their own use, but they do not

become manufacturing companies thereby, or entitled to the exemption extended to such companies. A manufacturing company, on the other hand, does not cease to be such because it seeks to supply its raw material by production instead of purchase. It may subject so much of its capital as is so employed to taxation, but it does not lose its own identity. The question whether a given company is incorporated as a manufacturing company, and is actually engaged in the business of manufacturing, is to be decided upon the proofs.

The court will look at its title, its articles of association or charter, and the provisions of the statute under which the incorporation has been effected. If these do not effectually settle the character of the company, recourse must then be had to the business organization, the character of the plant, and the actual business entered upon. Applying these tests to this case, we could not hold that the company was organized for mining, or for any purpose other than that of manufacturing. It has shown by its name, its legal organization, the statute under the provisions of which it was incorporated, and by its whole course of corporate conduct, that it was organized for manufacturing iron and steel and for no other purpose. It is therefore, within the words and the spirit of the act of 1889, a manufacturing company, and as such entitled to exemption from taxation on its capital stock. Having reached this conclusion, we congratulate ourselves upon being able to do in this case that which it is rarely in our power to do, reverse a judgment of the court below with the cordial approval of the court by which the judgment was rendered.

The judgment is reversed and judgment is entered in favor of the defendant below, on the findings of the learned trial judge, and the evidence.

See also the following cases.