## Commonwealth *v.* Lukens, Appellant.

Argued May 22, 1933.   Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Frederic L. Clark,* of *Shields, Clark & McCown,* with him *John R. Scholl,* for appellant.

*Philip S. Moyer,* Deputy Attorney General, with him *Wm. A. Schnader,* Attorney General, for appellee.

OPINION BY MR. JUSTICE MAXEY, June 30, 1933:

The Act of June 1, 1889, P. L. 420, as amended by the Act of April 25, 1929, P. L. 662, imposed a tax of eight mills on the gross receipts (from intrastate business) of all persons, corporations, etc., owning and operating any railroad, pipe line, conduit, steamboat, street passenger railway, traction system, etc., or other device for the transportation of freight, passengers, baggage, or oil, *except taxicabs, motor buses and motor omnibuses.* (The court below suggested that the only reason for using both "motor buses" and "motor omnibuses" in this taxing statute is that the Motor Code of Pennsylvania requires a motor bus to have a certificate of public convenience, and that "a motor omnibus is something like a school bus or hotel bus which is not run primarily for

profit.") The question presented is: Does this act violate the uniformity clause of article IX, section 1, of the Constitution of Pennsylvania, which provides that "all taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax . . . . . . ?"

The appellant during the six-month period ending June 30, 1930, was engaged in the business of transporting various articles of freight and baggage for hire by means of motor trucks to and from points in and about Philadelphia, and from points in and about Philadelphia to other points in the Commonwealth. He used twenty-four motor trucks for this purpose. He reported gross receipts of $23,938.05. The tax at the rate of eight-tenths of one per cent amounting to $191.50 was assessed against him on November 27, 1931, by the Department of Revenue and approved by the Department of the Auditor General on November 30, 1931. Appellant filed a petition with the Department of Revenue alleging that the act under which the tax was assessed was unconstitutional and prayed for a resettlement of the tax. Both the Department of Revenue and the Board of Finance and Revenue negatived appellant's contention and the case reached on appeal the Court of Common Pleas of Dauphin County, where it was tried without a jury under the Act of April 22, 1874, P. L. 109. That court held the taxing act constitutional and directed judgment to be entered in favor of the Commonwealth in the sum of $191.50, with interest from February 28, 1932, amounting to $11.49, and the Attorney General's commission of 5 per cent or $10.15. Exceptions to the findings of fact and conclusions of law were overruled on March 30, 1933, and on April 4, 1933, judgment was entered against the defendant for $213.14.

It is the contention of appellant that the exemption of taxicabs, motor buses and motor omnibuses from the tax is an arbitrary and illegal classification. This contention is based largely on the ground that these vehicles

carry a certain amount of freight and baggage. The Commonwealth contends that such carriage is negligible in amount and merely incidental to the business of taxicabs and buses.

This court said in Com. v. Girard Life Ins. Co., 305 Pa. 558, 562, 158 A. 262: "Is there such a difference between the entity taxed and the one not levied upon, with relation to the act in respect to which the classification is proposed, as justified the legislature in fixing the classes which it did? If there is, the statutory provision is valid, if not, it is void."

In Keator v. Lackawanna Co., 292 Pa. 269, 273, 141 A. 37, we said: "While the Constitution does not forbid classification, it does hold that it must not produce diversity in results, or lack uniformity in its operation; there must be a real distinction between the objects. . . . . . . 'It is not competent for the courts to declare an act of assembly void, unless its violation of the Constitution was plain, clear, and palpable, so as to preclude doubt or hesitation': Kitty Roup's Case, 81* Pa. 211."

In Cooley's Constitutional Limitations, eighth edition, volume 2, page 825, it is said in regard to legislative classification of subjects: There must be "reasonable grounds......for making a distinction between those who fall within such class and those who do not." A footnote on this page cites the following from Matheson v. Minneapolis St. Ry. Co., 126 Minn. 286, 148 N. W. 71: "A classification for purposes of legislation, to be valid 'must be based upon some reason of public policy, growing out of the condition or business of the class to which the legislation is limited.' But it is the province of the legislature to determine what differences or peculiarities, of condition or of business, furnish a sufficient basis for applying a different rule to those engaged in such business or those affected by such condition, than is applied to the remainder of the community. . . . . . . When such questions have been determined by the legislature, the legislative judgment is binding upon the

courts, unless they can point out that the classification adopted is purely fanciful and arbitrary, and that no substantial or logical basis exists therefor." See also Com. v. Delaware Div. Canal Co., 123 Pa. 594, 620, 16 A. 584.

Cooley on Taxation, fourth edition, volume 1, page 752, says: "Merchants may be classified separately according to whether they are wholesale or retail dealers [citing, inter alia, Com. v. Clark, 195 Pa. 634, 46 A. 286]; the nature of the goods sold; whether they pay an annual tax upon their stock of goods; whether they deal in merchandise at any exchange or board of trade; whether stocks, grain, cotton, etc., are dealt in for future or for actual delivery." The Supreme Court of Texas has held that persons owning or controlling pipe lines may be subclassified according to the products transported: Texas Co. v. Stephens, 100 Tex. 628, 103 S. W. 481.

In the courts of the United States questions similar to the one now before us have arisen where classification for purposes of taxation has been challenged as being violative of the equal protection of the law clause of the federal Constitution. The principles enunciated in the decisions of these cases are equally applicable here.

In State Board of Tax Commissioners of Indiana v. Jackson, 283 U. S. 527, 537, the Supreme Court of the United States in an opinion by Mr. Justice ROBERTS said: "The power of taxation is fundamental to the very existence of the government of the States. The restriction that it shall not be so exercised as to deny to any the equal protection of the laws does not compel the adoption of an iron rule of equal taxation, nor prevent variety or differences in taxation, or discretion in the selection of subjects, or the classification for taxation of properties, businesses, trades, callings, or occupations. ......
The fact that a statute discriminates in favor of a certain class does not make it arbitrary, if the discrimination is founded upon a reasonable distinction, American

Sugar Rfg. Co. v. Louisiana, 179 U. S. 89, or if any state of facts reasonably can be conceived to sustain it."

In Quong Wing v. Kirkendall, 223 U. S. 59, the United States Supreme Court upheld the constitutionality of a State law which exacted the payment of a license by all persons engaged in the laundry business other than the steam laundry business, with a proviso that it should not apply to women so engaged where not more than two women were employed. The Supreme Court said in an opinion by Mr. Justice HOLMES: "A State does not deny the equal protection of the laws merely by adjusting its revenue laws and taxing system in such a way as to favor certain industries or forms of industry. Like the United States, although with more restriction and in less degree, a State may carry out a policy, even a policy with which we might disagree. ...... It may make discriminations, if founded on distinctions that we cannot pronounce unreasonable and purely arbitrary."

In American Sugar Refining Co. v. Louisiana, supra, the United States Supreme Court held that a State law "imposing a license tax upon persons and corporations carrying on the business of refining sugar and molasses does not, by exempting from such tax 'planters and farmers grinding and refining their own sugar and molasses,' deny sugar refiners the equal protection of the laws." In that case the Supreme Court said: "The act in question does undoubtedly discriminate in favor of a certain class of refiners, but this discrimination, if founded upon a reasonable distinction in principle, is valid. Of course, if such discrimination were purely arbitrary, oppressive or capricious, and made to depend upon differences of color, race, nativity, religious opinions, political affiliations or other considerations having no possible connection with the duties of citizens as taxpayers, such exemption would be pure favoritism, and a denial of the equal protection of the laws to the less favored classes."

In Williams v. Fears, 179 U. S. 270, the Supreme Court of the United States upheld a State act which im-

posed a tax upon an "emigrant agent," who was engaged in hiring laborers to be employed beyond the limits of the State, but exempted from taxation the business of hiring laborers to be employed within the State.

Appellant contends in the case at bar that the classification here is unreasonable because motor buses by carrying freight compete with his truck business and therefore motor buses and his trucks should be treated exactly alike by the State in its tax levying rôle. The court below found as facts: "2. The transportation of freight and baggage for hire is only an incidental business to the transportation of passengers, which is the principal business of taxicabs, motor buses and motor omnibuses.

"3. The gross receipts from the transportation of freight and baggage by taxicabs, motor buses and motor omnibuses is an insignificant part of the total gross receipts ranging in Pennsylvania from one-tenth of one per centum to two per centum of the gross income.

"4. The motor trucks of the defendant are not engaged in the business of transporting passengers and their principal business is the transportation of freight or baggage for hire."

These findings of fact are based on evidence that is not controverted. Even if there was competition between the business of the appellant and the business of the taxicabs, motor buses, and motor omnibuses, this fact would not *in itself* be sufficient to justify a judicial declaration of the law's invalidity as an arbitrary, unreasonable classification. It was held in Heisler v. The Thomas Colliery Co., 260 U. S. 245, affirming the decision of the Supreme Court of Pennsylvania, 274 Pa. 448, 118 A. 394, that a tax upon anthracite coal was not discriminatory, although bituminous coal, which was claimed to be in competition in market with anthracite coal, was not taxed.

Appellant's complaint is that the legislature "has laid the tax upon the gross receipts on all forms of transpor-

tation, whether passenger, baggage, or freight, and then attempted arbitrarily to favor the owners of taxicabs and motor buses." The court below answered this argument in the following language: "The fact that an insignificant part of the receipts of taxicab companies or motor bus operators comes from the hauling of baggage cannot make the classification illegal or discriminatory. This classification is not based upon receipts but upon use of the highways. Furthermore, the receipts derived from the hauling of baggage, being from one-tenth of one per centum [to two per centum] is inconsequential and incidental to the main purpose of the taxicab and motor bus operation and such incidental purpose is not controlling in the construction of taxing statutes: Com. v. Bornot, Inc., 34 Dauph. 178; Com. v. Pottsville Iron & Steel Co., 157 Pa. 500 [27 A. 371]; Martin Barlin v. Knox County, 132 Tenn. 238, 188 S. W. 795; Ex parte Weisberg (Cal.), 12 Pac. (2d) 446."

Appellant cites the case of Com. v. Quaker City Cab Co., 287 Pa. 161, 134 A. 404, and interprets it as saying: "There is no substantial difference for the purposes of this taxing act between a taxicab and the other instrumentalities of transportation mentioned in the act." The taxing act under review in that case was the Act of June 1, 1889, P. L. 420, 431 (which is amended by the act we are now reviewing). That act provided: "That every railroad company, pipe line company,......steamboat company......street passenger railway company and every other company......for the transportation of freight or passengers or oil,......shall pay......a tax of eight mills upon the dollar upon the gross receipts ......received from passenger and freight traffic transported wholly within this State." This court held that a taxicab company transporting passengers is a transportation company within the meaning of that act. This interpretation of the taxing act of 1889 does not give the slightest support to appellant's contention that the legislature does not possess the constitutional power to

exempt taxicabs, motor buses, and motor omnibuses from the burdens of this taxing act, as it did in the amendment of April 25, 1929, P. L. 662. The decision of this court in the case just cited merely interpreted the words of a statute which were so plain as to make interpretation almost superfluous. We are now asked to interpret the Constitution in such a way as to deny to the legislature the power to make a classification for tax purposes between trucking companies, such as appellant's, which are engaged exclusively in transporting freight and baggage and companies which are engaged almost exclusively in transporting passengers. We cannot say that the classification made in effect (though not expressly) by the legislature between freight carrying vehicles and passenger carrying vehicles is so plainly, clearly, and palpably unreasonable as to justify us in declaring it violative of the taxing uniformity clause of the Constitution. We can understand how the classification might well find support in considerations of public policy. See State ex rel. Wisconsin Allied Truck Owners' Assn. et al. v. Pub. Ser. Com. of Wisconsin et al., 242 N. W. 668, 672, where the Supreme Court of Wisconsin said: "We think it is generally recognized that the vehicle carrying freight upon the highway perpetrates greater damage upon the highways than a motor vehicle simply carrying passengers. Their construction is different, and their reaction upon the highway is different. The classification is permissible."

There are sufficient reasons grounded in public policy to repel the imputation of arbitrariness in making the classification now challenged, though it may also be conceded that there is room for differences of opinion as to the wisdom or justice of the classification, but it must be borne in mind that the courts in passing upon questions like this, sit in judgment not on legislative wisdom but on legislative power.

Judgment affirmed.