## Rigby et al. *v.* Great Atlantic and Pacific Tea Company, Appellant.

544

Argued November 20, 1939.

Before
KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*E. Leroy van Roden* and *Wm. N. Trinkle,* of *Truscott, Trinkle & Wright,* for appellant.

*Edward L. F. Clarke,* for appellees.

OPINION BY KELLER, P. J., April 18, 1940:

By lease dated November 13, 1936 the plaintiffs rented to the defendant a store room in the borough of Media for the term of three years, beginning December 1, 1936 and ending November 30, 1939. The rent fixed was $10,800 for said term, payable in monthly payments in advance of $300 each. The lessee was given, at its option, the privilege of two successive renewals, each renewal to be for a period of three years, and to be subject to all the terms and conditions of the lease, except that the annual rental would be $4800.

At the same time, a rider, signed by both parties, was attached to the lease and made a part of it, in the following form:

"In the event that, at any time during the term of this lease or any renewal thereof, the United States or the State of Pennsylvania, or any municipal or governmental subdivision thereof shall, by any new or amendatory legislative act, ordinance or otherwise, impose upon the lessee or its business, income or sales any tax or license fee by reason of its conducting a chain store business in Media, Pennsylvania, in addition to such tax or license fee as may be imposed by any act or ordinance in force at the time this lease is executed, then the lessee at its option may cancel this lease at any time by giving the lessor thirty days' written notice of its election so to do."

While the original term of the lease was in force, the General Assembly of Pennsylvania passed the Act of June 5, 1937, P. L. 1656, which was duly approved by the Governor and became effective immediately upon final enactment, entitled, "An act *imposing an annual license tax* for the privilege of operating, maintaining, or controlling within this Commonwealth a store or stores, theatre or theatres[1], as herein defined; prescrib-

---

[1] We shall hereafter omit all reference in the act to theatres.

ing the method and manner of collecting such tax and its disposition, etc., (Italics supplied)

The act made it "unlawful" for any person to open, establish, operate, maintain or control any store in the Commonwealth without first obtaining a license from the Department of Revenue; but provided that any person, so engaged in the operation of such a store on the effective date of the act, should have sixty days within which to obtain the first license. Each store was required to have a separate annual license, which should be effective from June 1 to May 31 following (sec. 3); and provided (sec. 4) that "every person opening, operating, maintaining or controlling one or more stores ...... within this Commonwealth, under the same general management, supervision or ownership, *shall pay an annual license tax* (Italics supplied) for the privilege of opening, establishing, operating, maintaining or controlling" the same, as follows:

| | | |
|---|---|---|
| For one store | $1 | each |
| For the next four stores | 5 | " |
| For the next five stores | 10 | " |
| For the next five stores | 20 | " |
| For the next five stores | 30 | " |
| For the next ten stores | 50 | " |
| For the next twenty stores | 100 | " |
| For the next twenty-five stores | 200 | " |
| For the next twenty-five stores | 250 | " |
| For the next 100 stores | 350 | " |
| For the next 300 stores | 450 | " |
| For additional stores over 500 | 500 | " |

The act also provided (sec. 7) that any person operating, etc. a store without a license as therein provided should be guilty of a misdemeanor, punishable by a fine of not less than $50, nor more than $100; and that each and every day that such violation continued should constitute a separate and distinct violation.

The other provisions of the act are not here material.

On May 20, 1938, the lessee gave the lessors written

notice of its intention to cancel the lease, in accordance with its terms, and vacate the premises on or before June 30, 1938, and actually vacated the premises before the date stated, having paid all rent due up to July 1, 1938.

The lessors brought this action in assumpsit on November 22, 1938, claiming five months rental due (each month in advance), from July 1, 1938 to November 30, 1938. A recovery in the action would also adjudicate plaintiffs' right to rent for the third year under the lease.

The case came on for trial on April 10, 1939, and the court, on that day, directed a verdict in favor of the plaintiffs for the full amount of their claim with interest, subject to a reservation as to the constitutionality of the Act of 1937, supra; and refused defendant's point for binding instructions.

Subsequently, on July 10, 1939, (after the act had been declared unconstitutional by the Supreme Court of Pennsylvania, in *American Stores Co. v. Boardman*, 336 Pa. 36, 6 A. 2d 826—June 19, 1939) the court refused defendant's motion for judgment non obstante veredicto, and directed judgment to be entered for the plaintiffs in the amount of the verdict, $1530, with interest from April 10, 1939. From the judgment entered pursuant to said order, defendant appealed.

The judgment must be reversed and entered for the defendant.

To arrive at the intention of the parties in including the rider as part of the contract, it must be read in the light of the circumstances under which it was made, and "we may also with propriety consider the situation of the parties at that time, the necessities for which they naturally provided, the advantages each probably sought to secure and the relation of the properties and rights in regard to which they negotiated. *Tucker v. Fertig*, 275 Pa. 351, 353, 119 A. 412": PARKER, J. in *Baseman v. Shell Union Oil Corp.*, 138 Pa. Superior Ct. 512, 10 A. 2d

881, a case also dealing with the cancellation of lease agreements.

The present defendant operated a widely known and widely extended system of chain stores in the United States—the record shows it operated 1992 stores in Pennsylvania, on which the annual tax, as imposed by the Act of 1937, supra, would have been $930,071, as over against $1992, to be paid by 1992 individuals operating one store each. The statute was clearly directed against chain stores. A movement had been set in motion to tax chain stores in a sharply rising ratio or proportion, on the basis of the number of individual stores operated in a single jurisdiction, or in the whole United States (*Great Atl. & Pac. Tea Co. v. Grosjean,* 16 Fed. Supp. 499, D. C. La. July 24, 1936). Statutes or ordinances imposing such taxes had been sustained in various states[2] and their constitutionality had been upheld by the Supreme Court of the United States.[3] We have a right to take judicial notice of these facts. They were known to every one who read the law reports and the newspapers. (See Thayer's Cases on Evidence, Judicial Notice, (pp. 13-17) and cases cited, pp. 17-37[4]).

---

[2] *State ex rel. Lane Drug Stores v. Simpson,* 122 Fla. 582, 670, 166 So. 227, 262; *J. C. Penney Co. v. Diefendorf,* 54 Idaho 374, 32 P. 2d 784; *Safeway Stores v. Diefendorf,* 54 Idaho 407, 32 P. 2d 798; *Midwestern Petroleum Corp. v. State Tax Commrs.,* 206 Ind. 688 and 709, 187 N. E. 882 and 191 N. E. 153; *C. F. Smith Co. v. Fitzgerald,* 270 Mich. 659, 259 N. W. 352, appeal dismissed, 296 U. S. 659; *Safeway Stores v. Portland,* 149 Ore. 581, 42 P. 2d 162; *Great Atl. & Pac. Tea Co. v. Spartanburg,* 170 S. C. 262, 170 S. E. 273; *Great Atl. & Pac. Tea Co. v. Maxwell,* 199 N. C. 433, 154 S. E. 838, affirmed, 284 U. S. 575.

[3] *State Board of Tax Commrs. v. Jackson,* 283 U. S. 527; *Fox v. Standard Oil Co.,* 294 U. S. 87 and 732; *Great Atl. & Pac. Tea Co. v. Grosjean,* 16 Fed. Supp. 499 (D. C. La. July 24, 1936) affirmed, 301 U. S. 412 (May 7, 1937) rehearing denied, 302 U. S. 772.

[4] *Brown v. Piper,* 91 U. S. 37; *Munshower v. State,* 55 Md. 11; *Taylor v. Barclay,* 2 Sim. 213; *Owings v. Hull,* 9 Pet. 607; *Hanley v. Donoghue,* 116 U. S. 1; *The Pawashick,* 2 Lowell 142; *Kearney v. King,* 2 B. & Ald. 301.

The evident purpose of the rider was to give the lessee the option to cancel the lease if the General Assembly of Pennsylvania passed an act, or the borough council of Media adopted an ordinance, newly imposing such a tax. It did not *require* the lessee to cancel the lease, but gave it the option to do so *at any time* thereafter, by giving the lessors thirty days' written notice of its election to do so. The language is clear and unambiguous. It says nothing about a *constitutional* statute, or *constitutional* ordinance. It reads, "In the event that, at any time during the term of this lease or any renewal thereof, the United States, or the State of Pennsylvania, or any municipal or governmental subdivision thereof shall, by *any new or amendatory legislative act,* ordinance or otherwise, *impose* upon the lessee, or its business, ...... any tax or license fee by reason of its conducting a chain store business in Media, ...... then the lessee may cancel this lease at any time by giving the lessor thirty days' written notice of its intention so to do." (Italics supplied)

It is undisputed that during the term of the lease the State of Pennsylvania did pass a new legislative act, effective June 5, 1937, which "imposed" on the lessee a license fee for the privilege of operating or maintaining its stores in Pennsylvania—including Media—and that said license fee was graduated so as to affect most heavily persons or corporations operating a number or chain of stores; and that on May 20, 1938, before the constitutionality or unconstitutionality of that statute had been finally determined, the lessee exercised the option secured to it in said lease and elected to cancel it, effective June 30, 1938, and so notified the lessors in writing.

The undisputed facts, as above set forth, constituted a good defense to the plaintiffs' claim and called for a directed verdict for the defendant.

The circumstances all negative the assumption of the appellees, adopted by the court below, that the option

in the rider was conditioned on the statute or ordinance, which imposed the tax or license fee, being a constitutional statute or ordinance. It does not say so; and to so hold would not only be adding a condition to a perfectly clear and unambiguous contract, but also would deprive the defendant of the protection which the clause was designed to give it. For, in order to obtain the benefit of the option, the lessee defendant must elect to cancel the lease and vacate the premises. The mere enactment of the statute did not affect the lease until the lessee acted and pursuant to notice of cancellation vacated the leased premises. If the lessee was obliged to remain in the premises until the constitutionality of the statute affecting it was finally determined, the clause might almost as well not have been included, for the final determination of such a question, necessarily takes considerable time—in the present case, it was not finally settled until June 19, 1939, when, if it had been held constitutional, only four months out of the term would have been affected by the option.[5] On the other hand, if the lessee, following the passage of the act, elected to cancel, and vacated the premises, under appellee's theory, the lessee's liability for the rental for the balance of the term, ensuing after vacating the premises, would depend on the outcome of litigation to test the constitutionality of the statute; if constitutional, the lessee would be relieved; if unconstitutional, the lessee must pay, although it had not occupied the premises after exercising its election. We cannot conceive that the parties intended any such indefinite arrangement, in the face of the clearly expressed language of the instrument.

The word 'impose' means to lay, as a charge, tax,

---

[5] In *Great Atl. & Pac. Tea Co. v. Grosjean,* supra, the Louisiana statute in question was passed in 1934—the bill filed in the District Court was dismissed July 24, 1936 and the case was not finally determined by the Supreme Court of the United States until May 7, 1937, rehearing denied October 11, 1937.

penalty, etc.; to levy (Webster). The tax or license fee is *imposed,* when it is *laid,* or *levied,* not when it is *collected or paid.* (*Westhus v. Union Trust Co.,* 164 Fed. 795, 799, 90 C. C. A. 441 8th Circuit) approved in *Hertz v. Woodman,* 218 U. S. 205, 212). Whether it can be justified or enforced, is a wholly different matter.

Pursuant to the Act of May 25, 1939, P. L. 182, the School Districts of the Cities of Philadelphia and Pittsburgh, respectively, levied certain taxes, which have been collected in the aggregate of thousands of dollars. At a recent session of the Supreme Court,—the newspapers inform us—an appeal was argued in which the constitutionality of that statute was attacked. If it should be held unconstitutional, it would be difficult to convince property owners who had paid the tax, that no tax had been laid or imposed, rather than that the tax levied or imposed had been held to be an unconstitutional levy. Certain persons are said to have been sent to prison for failing to comply with duties or obligations imposed under the Federal National Recovery Act, before it was declared unconstitutional by the Supreme Court of the United States. The unfortunates who served jail sentences, for failing to comply with the obligations so imposed, will hardly be convinced that no such duties had been imposed by the statute, rather than that they had been imposed illegally or unconstitutionally.

Furthermore, there is authority, both state and federal, that not everything done pursuant to a statute subsequently held to be unconstitutional is avoided or held to be of no effect. See, inter alia, *City Deposit Bank & Trust Co. v. Zoppa,* 336 Pa. 379, 9 A. 2d 361; *Clark v. Com.,* 29 Pa. 129; *Com. v. McCombs,* 56 Pa. 436, 438; and *Chicot County Drainage District v. Baxter State Bank et al.,* 308 U. S. 371, (January 2, 1940); although they are not controlling because in this case we are not construing a statute, but a contract made by the parties.

In the present case the annual license tax was specifically imposed by the statute and the imperative duty of

paying the license tax was expressly imposed on every person or corporation owning or operating stores within the State; such operation, without payment of the tax and obtaining a license, was declared unlawful, and violation of the statute was made a misdemeanor.

Furthermore, the principle is well established in this Commonwealth that, "as respects state legislation, in order to declare an Act of the General Assembly unconstitutional, its want of authority to pass the act must clearly appear,—to doubt is to decide in favor of its constitutionality: *Com. v. Lukens,* 312 Pa. 220, 223, 167 A. 167; *Keator v. Lackawanna County,* 292 Pa. 269, 273, 141 A. 37; *Kitty Roup's Case,* 81 Pa. 211"; *Rohrer v. Milk Control Board,* 322 Pa. 257, 260, 186 A. 336; and, in exercising its election under the contract, the appellant lessee had a right to act on that principle, the clause of the contract in question not restricting its option and election to *constitutional* statutes.

Appellant's right to exercise its election to cancel the lease was not affected by its filing a bill to have the statute declared unconstitutional. There was no inconsistency in such action which affected its legal rights under the rider. It operated many other stores in the State which would be affected by the statute and it could proceed as any other interested party to question its constitutionality without waiving or affecting its right to cancel the lease if any statute, constitutional or not, imposing new taxes or license fees on chain stores was enacted in Pennsylvania.

Nor was it affected by the fact that, *at the time of trial,* April 10, 1939, the Dauphin County Court had entered a decree holding the tax unconstitutional. The decree had not been entered when defendant made its election and canceled the lease. An appeal was taken from that decree within three weeks, and the question was not argued in the Supreme Court until a year, nor finally determined by it until a year and a month, after appellant exercised its option.

Nor was it affected by the fact that appellant subsequently leased a larger store in Media. As this tax and nearly all such chain store taxes were imposed on the number of stores operated and not on the volume of business transacted in any store, appellant and other chain store operators naturally attempted to lower their taxes by concentrating their stores into fewer and larger ones.

Nor was the appellant estopped from exercising its election by the fact that it waited ten or eleven months before doing so. The contract provided that it could do so *"at any time"* after the act was passed imposing the tax, "by giving the lessor thirty days' written notice of its election so to do." Estoppel only arises where the other party has been injured by the action or actions complained of. Here the appellees' counsel frankly admitted that the failure to exercise the option immediately had benefited them—the longer it was postponed the more rental they received.

The assignments of error are sustained. The judgment is reversed and is now entered for the defendant *non obstante veredicto.*