## Paul v. Kauffman et al.

*H. M. Miller*, for plaintiff.
*E. W. Beloff* and *C. J. Green*, for defendants.

ALESSANDRONI, J., January 27, 1947.—This is a bill in equity to reform a written lease and to enjoin the enforcement by the lessor of the possessory remedies afforded to him under the terms of the lease as it is now written.

The complaint alleges that respondent Harry M. Kauffman employed respondent Albert M. Greenfield & Co. to lease premises 423 South Street, in the City of Philadelphia, owned by Kauffman; that by written lease, dated March 18, 1944, the property was leased to complainant Benjamin Paul for a period of seven years and nine months, beginning April 15, 1944. It is further alleged that complainant employed Max Schermer, Inc., to act as his agent in negotiating the lease. The negotiations were carried on by Joseph E. Sherman, an employe of Albert M. Greenfield & Co., and David Mamolen, an employe of Max Schermer, Inc. The bill alleges that Sherman informed Mamolen that Kauffman was a tenant in premises 441 South Street, where he conducted a drug business and his lease to that property expired February 1, 1947; that Kauffman had purchased 423 South Street for his

own use and occupancy in the event he was unable to secure an additional five-year term and was compelled to vacate 441 South Street. It is further averred that Sherman offered Mamolen a lease for the term of seven years and nine months, subject to the condition that if Kauffman failed to secure an additional five-year term for the premises which he occupied and by reason thereof was compelled to remove and occupy 423 South Street, then Kauffman would have the privilege of cancelling the proposed term of the complainant Paul. The bill further alleges that Paul, upon being informed of those terms, negotiated directly with Kauffman for an unconditional term, and upon being assured by Kauffman that there would be little difficulty in Kauffman's obtaining an additional term of five years and upon being further assured that Kauffman would have the right to cancel the proposed lease only in the event that it was necessary for Kauffman to occupy the premises himself for the conduct of his business, Paul agreed to and orally accepted the offer of the proposed lease upon the understanding that this term would be incorporated in the written lease to be prepared by Albert M. Greenfield & Co. The bill further alleges that after the lease was prepared, it was executed by Paul in reliance upon the assurance of Sherman that the lease set forth the oral understanding of the parties as to the right of cancellation. Paul then entered possession and expended an unspecified sum of money for specially built store equipment. On July 23, 1946, Albert M. Greenfield & Co., on behalf of Kauffman by written notice in accordance with the provisions of the lease, requested the complainant to vacate the premises on January 14, 1947, advising Paul that Kauffman was unable to continue as a tenant in premises 441 South Street for an additional period of five years and had been notified by his landlord to vacate.

It is alleged that the written lease, which contains a specific typewritten paragraph governing the rights

of cancellation, and permits Kauffman to terminate Paul's lease on January 14, 1947, upon the condition that Kauffman be unable to continue as a tenant in premises 441 South Street for an additional period of five years from February 1, 1947, does not contain the understanding of the parties and that by reason of mutual mistake and accident the material condition for the exercise of the right of cancellation was omitted; namely, the necessity of Kauffman to occupy the leased premises for his own use. Finally, it is alleged that Kauffman does not intend to occupy the premises himself but has leased it to a third party.

Respondent's answer rests upon the lease as written and denies that there was any mistake concerning its terms. It is denied specifically that as a condition to the right of cancellation Kauffman was required to use the leased premises for the conduct of his own business, and finally it is pleaded that the complaint is in violation of the statute of frauds.

By agreement of the parties the testimony taken and the evidence submitted at the preliminary hearing was to be considered by the court as final.

Upon consideration of the pleadings, the admissions contained therein, and the evidence offered in support thereof, the court makes the following:

### Findings of fact

1. Harry M. Kauffman became the owner of premises 423 South Street, Philadelphia, on or before March 18, 1944, and his ownership of the said premises still continues.

2. Harry M. Kauffman duly authorized Albert M. Greenfield & Co. to act as his agent in securing a tenant for the said premises and Benjamin Paul duly authorized Max Schermer, Inc., to act as his agent in negotiating a lease for the said premises.

3. As a result of the negotiations between the parties a lease was prepared by Albert M. Greenfield &

Co. prior to March 18, 1944. This lease was prepared pursuant to a written memorandum by Joseph Sherman, an employe of Albert M. Greenfield & Co., who conducted the negotiations on its behalf, which memorandum has been referred to as a "lease requisition".

4. The lease was forwarded to David Mamolen, an employe of Max Schermer, Inc., who conducted the negotiations on behalf of the said corporation as agent for Benjamin Paul, and was thereafter read to and approved by Benjamin Paul, who executed the same.

5. Thereafter the lease was executed by Albert M. Greenfield & Co. on behalf of Harry M. Kauffman and approved in writing by him.

6. Pursuant to the terms of the said lease Benjamin Paul entered into possession of the premises on or before April 15, 1944, and his occupancy thereof still continues.

7. On July 23, 1946, Albert M. Greenfield & Co., on behalf of Harry M. Kauffman, notified Benjamin Paul in writing to deliver possession of the property on January 14, 1947, in accordance with the terms of the lease. This notice specifically advised Paul that Kauffman was unable to continue as a tenant in premises 441 South Street for an additional term of five years from February 1, 1947, and had been notified by the owner of the premises to vacate.

8. Kauffman entered into a written lease, dated October 25, 1946, by the terms of which he demised premises 423 South Street to the Tri-Plex Shoe Company for a term of five years, beginning January 15, 1947, and does not now and never did intend to occupy premises 423 South Street for his own use in the conduct of his drug business.

9. Under the terms of a written lease between Paul and Kauffman the condition subsequently enabling Kauffman to exercise his right of cancellation has occurred.

10. The evidence is insufficient to establish that the parties by mutual mistake and/or accident omitted from the written lease dated March 18, 1944, an additional condition to the right of cancellation, to wit, that the lessor occupy the premises for his own use in the conduct of his business.

11. The complainant's request for findings of fact Nos. 1, 2, 3, 12, 16, and 17 are affirmed; Nos. 4, 5, 6, 7, 8, 9, 10, 11, 13, 14, and 15 are refused.

12. Respondent's request for findings of fact Nos. 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, and 31 are affirmed.

### Discussion

We find no merit in complainant's contention that resort to oral testimony is necessary to construe the terms of the written lease. There is neither a patent nor a latent ambiguity in the clause governing the right of cancellation as it is drafted. Parol evidence was admitted in support of the allegation that by accident or by reason of the mutual mistake of the parties there was an omission of a material condition in the terms of the lease. The authorities relied upon by complainant are restricted to cases in which the language used is not free from doubt, in which case the circumstances surrounding the execution of the writing may be taken into account: M. and M. B. & L. Assn. v. Willey et al., 321 Pa. 340, 344; Rigby et al. v. Great A. & P. Tea Co., 139 Pa. Superior Ct. 543, 547.

It is well settled that the evidence required to establish mutual mistake must be clear, precise and indubitable. Evidence of that character requires that the witnesses be found credible, the facts to which they testified distinctly remembered and the details narrated exactly in due order, and, finally, that their testimony be so clear, direct and convincing as to promote a clear conviction without hesitancy of the truth

of the facts in issue: Broida, to use, v. Travelers Insurance Co., 316 Pa. 444, 447.

Examining the record before us in the light of this requirement, we must conclude that the evidence does not comply with the defined standard. The credibility of complainant's testimony suffers from the inconsistencies of his statements under oath. The bill in equity specifically states that he executed the lease in reliance upon the assurances of Sherman. The evidence conclusively establishes that at no time did Paul and Sherman ever meet. Moreover, it appears that Sherman is alleged to have proposed a lease by the terms of which the right of cancellation was dependent upon the lessor's need to occupy and use the leased premises for the conduct of his own business. Nevertheless, Paul testified that upon conferring with Mamolen concerning these terms, he found it necessary to visit Kauffman personally and reached an oral understanding upon the same terms which were satisfactory to Paul. The circumstances of this direct negotiation between the principals for no apparent reason casts great doubt upon its credibility. Paul saw fit to employ the services of an alleged specialist in negotiating this lease and specifically relied upon his ability not only in conducting the negotiations but in advising him of the effect of the provisions of the lease after it had been prepared. At three separate places in the lease Paul of his own volition affixed his initials. The subject matter of the disputed paragraph is not obscure and the terms are spelled out completely. It is impossible to conceive of the failure of complainant to raise any question concerning the drafting of this paragraph if the oral understanding of the parties alleged to have been omitted by accident ever existed. It is even more baffling when we consider that neither of the two real estate experts Sherman and Mamolen, who testified on behalf of complainant in support of his contention of a mutual mistake, ever questioned the paragraph as written.

The testimony indicates that in accordance with the practice of Albert M. Greenfield & Co., Sherman prepared a lease requisition which is a complete form of memorandum upon which the draftsman of the lease relies. This requisition conforms precisely with the final draft of lease insofar as the issues before us are concerned. Sherman, who prepared the lease requisition, testified on behalf of complainant and both his testimony and that of Mamolen, the employe of complainant's agent, disclose what might have been the cause of the difficulty. On several occasions the witnesses in restating the understanding of the parties in their negotiations spoke of the condition upon which the right of cancellation depended merely as the inability of Kauffman to secure an additional term of five years for the occupancy of premises 441 South Street.

The evidence establishes that Kauffman conducted his drug business and occupied living quarters on the upper floors of the same building. It was admitted that premises 423 South Street are used for commercial purposes only and contain no living accommodations. Kauffman not only specifically denied the alleged mutual mistake but affirmatively stated that at no time did he ever intend to occupy the leased premises for his own use because of the lack of living accommodations. Kauffman acquired premises 437 South Street, which is equipped for dual use, residential and commercial, and has arranged with the tenant occupying the commercial portion to vacate and move into premises 423 South Street upon the complainant's removal.

We therefore conclude that the written agreement of lease as executed by the parties contained their complete understanding and that there was no oral agreement omitted therefrom by reason of a mutual mistake or accident.

In addition to the issue of fact a question of law is raised which is not free from doubt. Respondent has

pleaded the statute of frauds. It is well settled that where a written agreement is varied by oral testimony the whole contract in legal contemplation becomes parol: S. Dep. & T. Co. v. Coal & Coke Co., 234 Pa. 100. Therefore when one succeeds in reforming an executory agreement by oral testimony, which agreement is within the provisions of the statute of frauds, he is then confronted with the problem of enforcing an oral agreement in a situation in which the legislature has limited judicial authority to afford a remedy. In Brown, to use, v. Aiken, 329 Pa. 566, there was a written lease for a term of five years at the expiration of which the lessee was granted an option to renew for an additional term of five years at a specified rental. During the original term the rental provision was orally modified as to the amount of the rent, and the tenant testified that upon exercising his option for the additional term, it was orally agreed that the reduced rental continue. The lessor refused to accept any reduced rental payments for the new term and contended that the exercise of the option was unenforcible by reason of the statute of frauds. The court rejected the tenant's theory that the agreement which he sought to enforce was not an oral agreement, but a written one, the rental terms of which were orally modified, and therefore enforcible under the statute of frauds. See also Sferra v. Urling et al., 328 Pa. 161.

It is well settled that when a contract is required by the statute of frauds to be in writing its terms cannot be orally modified. The modification of the contract is subject to the same test to determine validity as is the original contract: 2 Williston on Contracts 1709, §594. The additional term of five years which complainant seeks, by modification of the right of cancellation, is as executory in nature as an option to renew the tenancy for an additional term. There is no operative difference between an option for an additional term and an estate for years subject to termination

upon the happening of a condition subsequent, which has admittedly occurred under the terms of the writing as it now exists.

A. L. I. Restatement of the Law of Contracts, §509, provides that where a transaction that the parties intended to enter into is within the terms of a statute of frauds, a written instrument made by the parties to affect their intention, which fails to do so owing to a mutual mistake, will be reformed to express the intended meaning only where there has been part performance under the written contract. We have been unable to find pertinent precedent defining the elements of part performance of the lease for a term of years. Noncompensable permanent improvements would appear to be essential. To enforce an oral agreement for the sale of lands the alleged vendee is required to prove that he took exclusive possession of the property pursuant to the terms of the oral agreement, which has been open, notorious and continuous ever since and that he made expenditures for improvements of a permanent nature that are not readily compensable in damages: Hartzell's Estate, 114 Pa. Superior Ct. 190. The statute of frauds developed in our jurisprudence at a time when real property represented the major form of wealth. To provide against the acts of designing persons and perjurers this act was adopted by legislatures from earliest times. To relieve against great inequities arising therefrom the doctrine of part performance was conceived and predicated upon the theory that the acts required under that rule of law were such that in common experience they were absolutely inconsistent with any relationship other than that resulting from an agreement of sale. The acts of a tenant in taking possession of a property under a lease and paying the agreed rental are not unequivocal. The evidence fails to establish noncompensable improvements of a value and character uncommon to a

tenancy of two years and nine months. The conduct of complainant in this case is equally consistent with the contention of respondent. To hold that these acts constitute part performance would defeat the intention of the statute of frauds insofar as it relates to leases.

We therefore conclude that the alleged oral modification, if established, would result in an oral executory agreement of lease for more than three years, equivalent to a tenancy at will under the statute of frauds, which is not protected by any part performance inconsistent with such a tenancy.

### Conclusions of law

1. Complainant has failed to establish a mutual mistake or accident by evidence that is clear, precise and indubitable.

2. Complainant is not entitled to reform the written lease for premises 423 South Street, Philadelphia, dated March 18, 1944, wherein Benjamin Paul is the lessee and respondent Harry M. Kauffman by his agent, Albert M. Greenfield & Co., is the lessor.

3. The lease of complainant for premises 423 South Street was duly terminated on January 14, 1947.

4. Had the evidence supported the prayer of complainant for reformation the resulting agreement would have created a tenancy at will since it would be an oral executory agreement of lease for a term in excess of three years in violation of the statute of frauds.

5. This bill in equity must be dismissed, costs to be borne by complainant.

6. Complainant's conclusions of law Nos. 1 and 2 are refused. Complainant's substituted conclusions of law No. 1 is affirmed; Nos. 2, 3, 4, and 5 are refused.

7. Defendant's conclusions of law Nos. 1, 2, 3, 4, 7, and 8 are affirmed; Nos. 5 and 6 are refused.

*Decree nisi*

Now, to wit, January 27, 1947, it is ordered, adjudged and decreed that the bill of complaint be dismissed, costs to be borne by complainant. The prothonotary is directed to give notice of entry of this decree nisi to the parties hereto or their counsel and that unless exceptions thereto are filed within 15 days this decree shall become final.