Argued July 22, affirmed August 22, reconsideration denied September 27, petition for review denied December 13, 1977

# OREGON STATE EMPLOYES ASSOCIATION, *Petitioner,*

*v.*

# OREGON STATE UNIVERSITY, *Respondent.*

## (No. C-93-76, CA 8129)

567 P2d 1085

Charlene Sherwood, Salem, argued the cause and filed the brief for petitioner.

James C. Rhodes, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before Schwab, Chief Judge, and Thornton and Johnson, Judges.

JOHNSON, J.

## JOHNSON, J.

■ During the course of labor contract negotiations, petitioner, Oregon State Employes Association (OSEA), proposed a union shop clause.[1] Employer, Oregon State University (OSU), refused to negotiate on this subject and OSEA filed an unfair labor complaint with the Employment Relations Board (ERB) charging OSU with failure to bargain in good faith. ERB dismissed the complaint and OSEA appeals. Two members of ERB dissented, and there was a division among the majority whether OSEA's proposal for a union shop was a prohibited or permissible subject of bargaining. We affirm because OSEA's proposal is a prohibited subject of bargaining.

OSEA's proposal would make it a condition of employment that within 31 days of the agreement, and for new employes from the date of employment, employes must become and remain members of the union. This is commonly referred to as a "union shop" agreement.

OSEA's argument principally rests on federal decisions interpreting the National Labor Relations Act (NLRA), 29 USC § 151 et seq., particularly *Labor Board v. General Motors,* 373 US 734, 83 S Ct 1453, 10 L Ed 2d 670 (1963). In *Klamath Co. v. Laborers Inter.*

---

[1] OSEA proposed the following clause:

"Section 1. It shall be a condition of employment that all employes of the Employer covered by this Agreement who are members of the Association on the date this Agreement is executed shall remain members and those who are not members on the effective date this Agreement is executed shall, on the thirty-first (31st) day following the date this Agreement is executed, become and remain members of the Association. It is also a condition of employment that all new employes covered by this Agreement and hired on or after the date this Agreement is executed shall on or before the thirty-first (31st) day following the beginning of such employment, become and remain members of the Association.

"Section 2. Nonassociation of an employe will be provided for only when based on a bona fide religious tenet or teaching of a church or religious body of which such employe is a member. Such employe shall pay an amount of money equivalent to monthly Association dues to a non-religious charity or to another charitable organization mutually agreed upon by the employe affected and the Association."

*Union,* 21 Or App 281, 534 P2d 1169 (1975), we noted that there were many similarities between the Oregon public employes' relations statutes, ORS 243.650 to 243.782, and the NLRA, and stated:

> "* * * Although the legislative history of ORS ch 243 is not specific on this point, the similarity between parts of the two statutes indicates that federal decisions interpreting the NLRA be given some weight in interpreting *similar* sections of the Oregon statute." 21 Or at 288. (Emphasis supplied.)

*Labor Board v. General Motors, supra,* is instructive in that it interprets NLRA § (1)(a)(3), the language of which is in part identical and in part is significantly different from ORS 243.672(1)(c). Section 8(a)(3) provides:

> "(a) It shall be an unfair labor practice for an employer
>
> "* * * * *
>
> "(3) *by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization:* Provided, That nothing in this subchapter, or in any other statute of the United States, shall preclude an employer from making an agreement with a labor organization (not established, maintained, or assisted by any action defined in this subsection as an unfair labor practice) to require as a condition of employment membership therein on or after the thirtieth day following the beginning of such employment or the effective date of such agreement, whichever is the later * * *." (Emphasis supplied.)

The italicized language is identical to the first sentence of ORS 243.672(1)(c). In *General Motors* the employer refused to bargain concerning the union's proposal for an "agency shop" whereby employes are not required to become members of the union as a condition of employment, but are required after 30 days employment to pay union dues. *General Motors* contended that the only allowable condition on employment under the proviso clause to section 8(a)(3) is a union shop. The Supreme Court held that an

agency shop is permissible. The Court traced the legislative history, stating that in the absence of the proviso clause, section 8(a)(3) outlaws any form of union security arrangement. The Court then went on to reason that since the proviso clause permits a union shop, union security agreements which are less compulsory in nature are permissible. Because the proposed agency shop did not require union membership, the court concluded that it was less compulsory than a union shop and thus a mandatory subject of bargaining.

The significant difference between section 8(a)(3) of the NLRA and ORS 243.672(1)(c) is that the proviso clause in the latter only permits a "fair share agreement." ORS 243.672(1)(c) provides:

"(1) It is an unfair labor practice for a public employer or its designated representative to do any of the following:

"* * * * *

(c) Discriminate in regard to hiring, tenure or any terms or condition of employment for the purpose of encouraging or discouraging membership in an employe organization. Nothing in this section is intended to prohibit the entering into of a fair-share agreement between a public employer and the exclusive bargaining representative of its employes. If such a 'fair-share' agreement has been agreed to by the public employer and exclusive representative, nothing shall prohibit the deduction of the payment-in-lieu-of-dues from the salaries or wages of such employes."

A fair share agreement is defined in ORS 243.650(10) and (16):

"(10) 'Fair-share agreement' means an agreement between the public employer and the recognized or certified bargaining representative of public employes whereby employes who are not members of the employe organization are required to make an in-lieu-of-dues payment to an employe organization. Such agreement shall reflect the opinion of a majority of the employes in the bargaining unit.

"* * * * *

[ 761 ]

"(16) 'Payment-in-lieu-of-dues' means an assessment to defray the cost for services by the exclusive representative in negotiations and contract administration of all persons in an appropriate bargaining unit who are not members of the organization serving as exclusive representatives of the employes. The payment shall be equivalent to regular union dues and assessments, if any, or shall be an amount agreed upon by the public employer and the exclusive representative of the employes."

■ The Oregon legislature apparently reasoned that the relationship of public employers and employes must be treated differently than private industry and thus made a substantial departure from the NLRA in determining a range of permissible union security arrangements.[2] The question presented, following the rationale of *General Motors,* is whether a union shop is less compulsory than a fair share agreement expressly permitted under ORS 243.672(1)(c). The answer is no because under the union shop the employe is required not only to pay dues, but to become a member of the union as a condition of employment.

■ The better part of OSEA's argument is derived from ORS 243.666(1) which provides:

"A labor organization certified by the Employment Relations Board or recognized by the public employer is the exclusive representative of the employes of a public employer for the purposes of collective bargaining with respect to employment relations. Nevertheless *any agreements entered into involving union security including an all-union agreement or agency shop agreement* must safeguard the rights of nonassociation of employes, based on bona fide religious tenets or teachings of a church or religious body of which such employe is a member. Such employe shall pay an amount of money equivalent to regular union dues and initiation fees and assessments, if any, to a nonreligious charity or to another charitable organization mutually agreed upon

---

[2] As further evidence the legislature intended to give different treatment to union security under public employe bargaining is ORS 663.125 which is part of chapter 663 relating to collective bargaining in the private industry. ORS 663.125 is modeled after NLRA § 8(a)(3) and expressly permits union shop agreements.

by the employe affected and the representative of the labor organization to which such employe would otherwise be required to pay dues. The employe shall furnish written proof to his employer that this has been done." (Emphasis supplied.)

OSEA argues that the reference to "union security including an all-union agreement or agency shop agreement" is legislative recognition that a union shop agreement is permissible. Such construction would place ORS 243.666(1) in direct conflict with the specific prohibition in ORS 243.672(1)(c). The first sentence of ORS 243.666(1) is an expression of the principle that a certified union is the exclusive bargaining agent for employes within the bargaining unit. The remainder of this section relates to union security agreement and seemingly has no place as part of ORS 243.666(1) or any of the other subsections of that statute. Reconciling it with the specific prohibition in ORS 243.672(1)(c), we conclude that the discussion of union security in ORS 243.666(1) is an inartful statement of an additional restriction on permissible union security agreements. ORS 243.672(1)(c) permits fair share agreements. The language of ORS 243.666(1), however, apparently prohibits payment in lieu of dues for persons holding certain religious beliefs provided employes make an in-lieu contribution to charity.

The legislative history supports this conclusion. It is clear from that history that the legislature never intended to permit union shop agreements. House Bill 2263 was introduced at the request of the Governor's Task Force on Collective Bargaining. The original subsection which is now ORS 243.672 did not contain the proviso clause for fair share agreements, but simply provided that it was an unfair labor practice for an employer to "discriminate in regard to hiring, tenure or terms or conditions of employment for purposes of encouraging or discouraging membership in an employe organization." Thus it is apparent that as originally drafted the bill would have prohibited

any form of union security arrangements. The House Labor and Industrial Relations Committee added the proviso clause for fair share agreements which was included in the final bill.[3]

The language of ORS 243.666(1) was part of the original bill and was not amended by the legislature. The language in that subsection relating to union security was taken verbatim from ORS 663.110 which deals with rights of employes under chapter 663 relating to private industry. We can only conclude that in lifting this language, the drafter neglected to delete the language "all-union agreement or agency shop agreement." It should also be noted that the term "all-union agreement" is not a labor law term of art. It is a term which could refer not only to a union shop, but also a closed shop or even a fair share agreement. In any event, in view of the express prohibition in ORS 243.672(1)(c), we must construe this language in ORS 243.666(1) as surplusage.

Affirmed.

---

[3] After House Bill 2263 passed the House, hearings were scheduled by the Senate Labor Committee. On May 31, 1973, the Executive Secretary of OSEA testified in favor of the amended House Bill 2263 as follows:

" 'A "closed shop" is one in which labor organization membership is required as a condition of employment. HB 2263 does not authorize a "closed shop". A union shop is one in which an employe is a bargaining unit is required after a certain period of time to become a member of the labor organization which represents him. HB 2263 does not authorize a "union shop".' "