STINES, *Respondent,*
*v.*
OREGON STATE EMPLOYES ASSOCIATION,
*Petitioner.*
(ERB No. C-147-77, CA 11356)

588 P2d 97

Bromleigh S. Lamb, Salem, argued the cause and filed the brief for petitioner.

Bruce Bischof and Bryant, Ericson, Jaqua & Bischof, Portland, filed the brief for respondent.

Before Schwab,* Chief Judge, and Thornton, Tanzer and Buttler, Judges.

THORNTON, J.

---

*Schwab, C. J., did not participate in this decision.

## THORNTON, J.

This is an appeal from a determination of the Employment Relations Board (ERB) on stipulated facts holding invalid a "maintenance of membership provision" embodied in the collective bargaining agreement between petitioner (union) and the University of Oregon Health Sciences Center (employer). As a result of the invalidity of the provision, ERB additionally held certain actions taken pursuant to the provision constituted an unfair labor practice within the meaning of ORS 243.672 (1)(c).[1]

The provision central to this controversy is Article 5 of the collective bargaining agreement between union and employer, effective March 15, 1977, through August 31, 1978, covering a unit of employer's employes that included the respondent here. In relevant part, Article 5 provides:

"*Section 1.* All members of the bargaining unit who are members of the Association as of the effective date of this Agreement or who subsequently voluntarily become members of the Association shall continue to pay dues, or the equivalent, to the Association during the term of this Agreement. This section shall not apply during the 30-day period prior to expiration of this Agreement for those employes who, by written notice sent to the

---

[1] ORS 243.672(1)(c) provides:

"(1) It is an unfair labor practice for a public employer or its designated representative to do any of the following:

"* * * * *

"(c) Discriminate in regard to hiring, tenure or any terms or condition of employment for the purpose of encouraging or discouraging membership in an employe organization. Nothing in this section is intended to prohibit the entering into of a fair-share agreement between a public employer and the exclusive bargaining representative of its employes. If such a 'fair-share' agreement has been agreed to by the public employer and exclusive bargaining representative, nothing shall prohibit the deduction of the payment-in-lieu-of-dues from the salaries or wages of such employes."

ERB held the employer responsible for the unfair labor practice. However, due to a "save harmless" agreement between the employer and the union, the union became ultimately liable for the acts taken on its behalf by the employer.

Association and the Employer, indicate their desire to withdraw their membership from the Association.

"*Section 2.* Upon written notice from the Association of the failure of any employe subject to this section to promptly make the payment required hereunder, the Employer will commence deductions of the certified amount of the Association monthly dues from the affected employe(s) paychecks and remit the aggregate amount so collected to the Association.

On March 19, 1976, Nancy Stines, respondent, enrolled with union, utilizing an enrollment form containing authorization for the deduction of union dues from her paycheck. The authorization provided:

"Pursuant to ORS 292.055 and unless notified by me in writing within 10 days of the annual anniversary date of my enrollment I request my employer to deduct monthly from my salary wages or other sums due me by virtue of my employment the amount of my dues in the Oregon State Employes Association as provided in its by laws and disburse same to the Oregon State Employes Association."[2]

On January 3, 1977, respondent submitted to employer a form entitled "Cancellation of Payroll Deduction" which requested employer to cease payroll deductions for the union. The form bears the notation, "eff 4-1-77" and is initialled "MC." It is not evident from the record whether respondent requested the delayed effective date, or whether the employer's administrator unilaterally made the request effective

---

[2] ORS 292.055 provides, in relevant part:

"(1) Upon receipt by him of the request in writing of a state officer or employe so to do, the state official authorized to disburse funds in payment of the salary or wages of such state officer or employe each month shall deduct from the salary or wages of such officer or employe the amount of money indicated in such request, for payment thereof to a labor organization as the same is defined in subsection (12) of ORS 243.711.

"(2) Such state official each month shall pay such amount so deducted to any such labor organization so designated to receive it.

"(3) Unless there is a contract to the contrary, upon receipt by him of the request in writing of such officer or employe so to do, such state official shall cease making such deductions and payments.

"* * * * *"

as of the next regular paycheck following the anniversary of respondent's enrollment. It is clear, however, that the initials are not respondent's. On May 4, 1977, an "Irene" in employer's payroll department notified union of respondent's dues cancellation. On May 5, 1977, union requested that employer comply with section 2 of Article 5 of the March 15, 1977, contract, and deduct the amount of the dues from respondent's paycheck. The same day, union notified respondent that cancellation of dues was contrary to Article 5 of the collective bargaining contract. Employer acceded to union's request and resumed deductions from respondent's paycheck.

ERB's conclusions of law hold that the action of the employer

"* * * was based wholly or in large part upon [the union's] letter of May 5, 1977 requesting the agency to continue said deduction in compliance with the Association security clause of the collective bargaining contract. The threshold question thus becomes whether or not that clause is valid."

Throughout the litigation below, and on appeal here, the parties have sought to apply the analysis of this court in *OSEA v. Oregon State University,* 30 Or App 757, 567 P2d 1085 (1977), in an attempt to discern whether the instant agreement is "less restrictive" than a fair-share agreement. ERB determined that because the agreement "does substantially restrict the rights of OSEA members to get out of and quit paying dues to that organization," it was more restrictive than fair share, and was therefore invalid. We believe the analysis of the union and ERB is in error, although ERB reached the correct result.

ORS 243.650(10) defines fair-share agreements as follows:

" 'Fair-share agreement' means an agreement between the public employer and the recognized or certified bargaining representative of public employes whereby employes who are not members of the employe organization are required to make an in-lieu-of-dues

payment to an employe organization. Such agreement shall reflect the opinion of a majority of the employes in the bargaining unit."

The agreement in issue has two components. First, it requires members to continue paying dues. Second, it effectively requires employes who withdraw from membership to continue paying "dues, or the equivalent." The second component of the agreement clearly requires "employes who are not members of the employe organization * * * to make an in-lieu-of-dues payment to an employe organization," within the meaning of ORS 243.650(10). Accordingly, the agreement *is,* in effect, a fair-share agreement. Although more restrictive fair-share agreements may certainly be conceived, the instant agreement is nonetheless subject to the statutory constraint of reflecting "the opinion of the majority of the employes in the bargaining unit." The agreement not having been submitted to the bargaining unit separately, collection of payments pursuant to the agreement constitutes an unfair labor practice. *Oregon City Fed. of Teach. v. PERB,* 23 Or App 540, 543 P2d 297 (1975).[3]

Affirmed.

---

[3] Although we analyze the facts in this case under the law prevailing at the time the issues arose, it should be noted that the legislature, in the 1977 session, redrafted ORS 243.650(10) to eliminate the language interpreted by this court to require a separate vote by the bargaining unit on the issue of fair share. *Oregon City Fed. of Teach. v. PERB,* 23 Or App 540, 543 P2d 297 (1975). The Governor vetoed the legislation on July 11, 1977. In special session, the legislature revitalized Senate Bill 474, and overrode the Governor's veto. Oregon Laws 1978, ch 5 (special session). ORS 243.650(10) now provides:

" 'Fair-share agreement' means an agreement between the public employer and the recognized or certified bargaining representative of public employees whereby employes who are not members of the employe organization are required to make an in-lieu-of-dues payment to an employe organization. Upon the filing with the board of a petition by 30 percent or more of the employes in an appropriate bargaining unit covered by such union security agreement declaring they desire that such agreement be rescinded, the board shall take a secret ballot of the employes in such unit and certify the results thereof to the recognized or certified bargaining representative and to the public employer. Unless a majority of the votes cast in an election favor such

union security agreement, the board shall certify deauthorization, thereof. A petition for deauthorization of a union security agreement must be filed not more than 90 calendar days after the collective bargaining agreement is executed. Only one such election shall be conducted in any appropriate bargaining unit during the term of a collective bargaining agreement between a public employer and the recognized or certified bargaining representative."