Argued January 24; affirmed March 12, 1935

# SAFEWAY STORES, INC. *v.* CITY OF PORTLAND ET AL.

(42 P. (2d) 162)

*Jay Bowerman,* of Portland (Manning & Harvey, of Portland, on the brief), for appellant.

*Frank S. Grant,* City Attorney, of Portland (L. E. Latourette, Deputy City Attorney, of Portland, on the brief), for respondents.

BEAN, J. Plaintiff asserts that the court erred in sustaining defendant's demurrer to plaintiff's amended complaint, thereby determining that the ordinance in question is valid, and that the court erred in not holding said ordinance to be void, and erred in entering a decree dismissing plaintiff's complaint.

Plaintiff contends that ordinance No. 61451 violates section 20, Article I of the state constitution, which provides: "No law shall be passed granting to any citizen or class of citizens, privileges or immunities which, upon the same terms, shall not equally belong to all citizens." Citing *State v. Wright,* 53 Or. 344, 348 (100 P. 296, 21 L. R. A. (N. S.) 349); *Ideal Tea Co. v. Salem,* 77 Or. 182, 186 (150 P. 852, Ann. Cas. 1917D, 684), and other authorities.

Section 32, Article I of the state constitution, as amended in 1917, provides as follows: "* * * all taxation shall be uniform on the same class of subjects within the territorial limits of the authority levying the tax."

Section 1, Article IX of that instrument, as then amended, provides as follows:

"The legislative assembly shall, and the people through the initiative may, provide by law uniform rules of assessment and taxation. All taxes shall be levied and collected under general laws operating uniformly throughout the state."

Prior to such amendment the limitations mentioned applied only to the taxation of property and did not apply to license privilege, occupation, excise and other taxes of like character, which, by common usage, are not laid on property. As to such taxes the state constitution, in its original form, imposed no restrictions upon the power of the legislature beyond those contained in the 14th amendment to the federal constitution: *Standard Lbr. Co. v. Pierce,* 112 Or. 314 (228 P. 812); *Portland v. Portland Gas & Coke Co.,* 80 Or. 194 (150 P. 273, 156 P. 1070); *Portland v. Portland Ry. L. & P. Co.,* 80 Or. 271 (156 P. 1058); *Kellaher v. City of Portland,* 57 Or. 575 (110 P. 492, 112 P. 1076); *Oregon v. Pac. States Tele. Co.,* 53 Or. 162 (99 P. 427).

It has been shown that ordinance No. 61451, which is assailed by the complaint in this suit, provides that a store shall not be operated without a license. An annual license fee is required to be paid as follows: $6 for a single store; $10 for each store in excess of one, but not exceeding five; $15 for each store in excess of five and not exceeding 10; $20 for each store in excess of 10 and not exceeding 20; and $50 for each store in excess of 20.

In section 34 (§ 73 of charter of 1903), subd. 21, of the charter of the city of Portland, we find that the city is authorized to pass a license ordinance as follows: "To grant licenses with the object of raising revenue or of regulation, or both, for any and all lawful acts, things or purposes, and to fix by ordinance the amount to be paid therefor, and to provide for the revoking of the same." See *Kellaher v. Portland,* supra; *Portland v. Portland Gas & Coke Co.,* supra; *Portland v. Portland Ry. L. & P. Co.,* supra; *Lovejoy v. Portland,* 95 Or. 459 (188 P. 207); *Korth v. Portland,* 123 Or. 180 (261 P. 895, 58 A. L. R. 665).

The council enacted Article XLV 3/4 of ordinance No. 61451, by virtue of the authority of the provision above quoted. In *Kellaher v. Portland,* supra, it is said:

"It is not questioned that the council has power to license vehicles for revenue, as attempted to be done in this case, as well as for the purpose of regulation. The charter provision (section 73, sub-sec. 21) grants this power. Certain trades and callings may be taxed without including all businesses that may be legally taxed for revenue, but the classification must be on some reasonable basis, so that it will apply to all engaged in the same business occupation."

And in *Lovejoy v. Portland,* supra, this court said:

"The city is authorized by its charter to impose licenses and taxes. The charter (section 73, subd. 21), granted by the legislature in 1903 (Sp. Laws 1903, C. 1) empowered the Council to 'grant licenses, with the object of raising revenue or of regulation, or both, for any and all lawful acts, things, or purposes, and to fix, by ordinance, the amount to be paid therefor, and to provide for the revoking of the same.   *   *   *'"

The matter with which we have to deal is ably presented by the briefs of counsel. The question has been discussed pro and con by able jurists, and while, in the early stages of the discussion, the decisions were far from being unanimous, at the present time it appears that it could be mentioned no longer as an open question. At least we do not feel free to make corrections of the opinions of the Supreme Court of the United States deciding, in principle, the controversy which we have before us.

The ordinance providing for licenses and taxes for the purpose of raising revenue and also for regulation, No. 61451, is not in conflict with section 32 of Article I, section 1 of Article IX, nor section 20 of Article I of the constitution of Oregon: *Standard Lbr. Co. v. Pierce,*

supra; *Kellaher v. City of Portland,* supra; *J. C. Penney Co. v. Diefendorff* (Idaho), 32 P. (2d) 784; *Safeway Stores, Inc. v. Diefendorff,* (Idaho), 32 P. (2d) 798; *State Bd. of Tax Com'rs. v. Jackson,* 283 U. S. 527 (75 L. Ed. 1248, 51 S. Ct. 540, 73 A. L. R. 1464), and notes in 85 A. L. R. 699.

■ In the very nature of things, it is impossible to devise a tax law that will operate with perfect equality on all. Where the classification for the purpose of taxation is a natural one, or a reasonable ground for the distinction exists, the law or ordinance will be upheld: 17 R. C. L. 509, §§ 30, 31.

■■ The question of classification of objects on which a license fee is imposed is purely legislative, and in the absence of abuse will not be interfered with by the court. In the case of *State Bd. of Tax Com'rs. v. Jackson,* supra, it was recognized as well settled that a state has the power to classify the objects of taxation and to treat the several classes differently, so long as the classification is reasonable and based upon some real and substantial difference, is not purely arbitrary or fictitious and all persons within the class, similarly circumstanced, are treated alike. It is too firmly established at the present day to admit of a doubt. It was there held that there was sufficient difference between chain stores and the different departments or units of department stores or associations of individual stores for the purpose of cooperative buying, exchanging of ideas as to advertising, sales methods, etc., to sustain the classification in question. The Indiana statute was there upheld. The license fees therein prescribed were as follows: Upon one store, the annual license fee is $3; upon two stores or more, but not to exceed five, $10 for each such additional store; upon each store in excess of five, but not to

exceed 10, $15 for each such additional store; upon each store in excess of 10, but not to exceed 20, $20 for each such additional store; upon each store in excess of 20, $25 for each such additional store. In principle we think it was like the ordinance in question.

In *Great Atlantic & Pacific Tea Co. v. Maxwell*, 199 N. C. 433, (154 S. E. 838), affirmed in 284 U. S. 575, (52 S. Ct. 26, 76 L. Ed. 500), it was said: "* * * there is a real and substantial difference between merchants who exercise the privilege of carrying on their business in this state, by means of two or more stores, and those who maintain and operate only one store, * * *." The case was affirmed by the Supreme Court of the United States, Mr. Justice Van Devanter and Mr. Justice Sutherland, who had formerly dissented in the Jackson case, taking the view that the question was no longer an open one.

The constitutionality of the South Carolina chain store tax law came in question in *Southern Grocery Stores v. South Carolina Tax Commission*, 55 Fed. (2d) 931. The act provided that every person, firm, corporation or association engaged in the business of operating or maintaining in the state, under the same general management, supervision, or ownership, one or more retail stores, should pay an annual license tax, in addition to all other license fees or charges, for each store or mercantile establishment situate in any incorporated city or town in the state, in accordance with the schedule given in the act, the amount of the tax being $5 for the first store, $10 for the second store, $15 for the third store, and so on, so that the tax on each successive store was increased by $5, up to and including the 30th store, for which the tax was $150, and the same sum for each store in excess of 30. The law did not apply to gas filling stations. The court held

that, in the light of *State Bd. of Tax Com'rs. v. Jackson,* supra, and other recent decisions of the United States Supreme Court, there could be no question as to the constitutionality of the statute.

The case of *Penney Stores v. Mitchell,* 59 Fed. (2d) 789, involved a Mississippi statute enacted in 1930, which imposed an annual privilege tax upon the business of selling any kind of property equal to one-fourth of 1 per cent of the gross income of the business, with the proviso that "if any person shall operate any more than five stores in this state, at or by which any such property is sold, at retail, there is likewise hereby levied on, and shall be collected of, such person, an additional tax equivalent to one-fourth of one per cent of the gross income of the business of all such stores."

The court said:

"The legislative right to classify being established, we see no reason to strike down the Mississippi statute because it has only two classes instead of five, as in Indiana, or because of a difference of opinion between state legislatures as to the number of units necessary to constitute a chain store."

In *Liggett Co. v. Lee,* 288 U. S. 517 (77 L. Ed. 929, 53 S. Ct. 481, 85 A. L. R. 699), it appears that the Florida statute imposed upon every person, firm, corporation, association, or copartnership opening, establishing, operating, or maintaining one or more stores within the state under the same general management, supervision, or ownership, a license fee for the privilege of carrying on such business, measured by the number of stores maintained or operated, the fee being fixed at $5 for one store; $10 for two or more, but not exceeding 15 stores, where the same were located in any one county; $15 for each additional store from two to 15, where the same are located in different counties,

etc., and, in addition, imposed a fee of $3 for every $1,000 of value of stock carried in each store. The Florida supreme court upheld the classification. The Supreme Court of the United States, while sustaining the constitutionality of the act, in every other respect, held that the feature thereof which increased the rate of taxation, where stores were located in more than one county, was not based upon any reasonable classification. See also *Great Atlantic & Pacific Tea Co. v. Morrissett*, 58 Fed. (2d) 991 (Affirmed in 284 U. S. 584 (76 L. Ed. 506, 52 S. Ct. 127)).

It is interesting to read the dissenting opinions. They display great learning and ability. They are, nevertheless, opinions without a decision. The majority still rules.

In *J. C. Penney Co. v. Diefendorff* and *Safeway Stores, Inc. v. Diefendorff*, supra, the court said: "If it does not clearly appear that this schedule of fees in question is such that the owners of chain stores will be so greatly handicapped thereby as to make their business unprofitable, while the business of independent operators who handle and sell the same or similar goods may be conducted profitably, such fees can not be held to be confiscatory."

In *Interstate Busses Corporation v. Blodgett*, 19 Fed. (2d) 256, 260 (Affirmed in 276 U. S. 245 (48 S. Ct. 230, 72 L. Ed. 551)), the court said: "The reasonableness of an excise tax for revenue does not depend upon whether a hardship may be worked in a single case, but upon the general operation of them all in the class to which it applies."

██ As long as the ordinance of the city of Portland comes within the radius of the authority of the city charter, that is, to grant licenses with the object of

raising revenue, or of regulation, or both, the ordinance, within the municipal limits of the city, has the same force and effect as a statute of the state. The city council was authorized by the charter to enact the ordinance in question: *Portland v. State Bank of Portland,* 107 Or. 267 (214 P. 813); *Grand Ave. Ry. Co. v. Citizens' Ry. Co.,* 148 Mo. 665, 671 (50 S. W. 305); 2 McQuillin, Munic. Corp. (2d Ed.) § 674.

In *Bradley v. Richmond,* 227 U. S. 477 (33 S. Ct. 318, 57 L. Ed. 603), a tax was imposed by an ordinance on the conduct of various businesses and gave a power of classification to a committee of the council. That committee classified private bankers, placing a tax of one amount on certain of them and of a different amount on others. It appeared that the business of those in the one class was that of lending money at high rates upon salaries and household furniture, while that done by the other class was that of lending money upon commercial securities. The classification was held not to offend the constitutional provision for equal protection of the laws. In *Metropolis Theatre Co. v. Chicago,* 228 U. S. 61 (33 S. Ct. 441, 443, 57 L. Ed. 730), an ordinance classified theatres for license fees based on and graded according to the admission charged. Some of the theatres charged a higher admission and had less revenue than those charging a smaller price, and therefore paid lower license fees. The court in that case held the classification was valid.

█ There is a real, recognized difference between a business carried on in one store and a business operated by means of a chain of stores. Whether it is wise or expedient, based upon such difference, to classify such chain stores in a class by themselves for the purpose of levying a license tax is, as we understand, a legislative question to be determined by the lawmakers.

Differences in organization, management and type of business transacted, between the business of chain stores and the other type of store, are such as to justify the classification made by a state statute or city ordinance imposing an occupation tax on the operation of mercantile establishments, graduated according to the number of stores owned, R. C. L. Per. Sup. "Licenses" (1934) (Pocket part, 1157, § 32).

Mr. Justice McCourt in *Standard Lbr. Co. v. Pierce,* supra, at page 332, quoted from *Knowlton v. Moore,* 178 U. S. 41 (44 L. Ed. 969, 20 S. Ct. 747), as follows:

"Taxes imposed with reference to the ability of the person upon whom the burden is placed to bear the same have been levied from the foundation of the government. So, also, some authoritative thinkers, and a number of economic writers, contend that a progressive tax is more just and equal than a proportional one. In the absence of constitutional limitation, the question whether it is or is not is legislative, and not judicial."

A careful comparison of the articles of the constitution of Oregon, referred to, with those of the state of Indiana, leads us to believe that there is no essential difference, as applied to the ordinance in question. The ordinance is not in conflict with any of the provisions of the Oregon constitution.

Plaintiff contends that in the enactment of the ordinance the rights of the unorganized general public are lost sight of, as an increase of retail prices may result. It may be that there was lurking in the minds of the municipal legislators the thought that if the chain stores were enormously increased, competition would be swept away and there would be danger that there would occur a rise in the prices of retail articles to the detriment of the general public.

In *Midwestern Petroleum Corp. v. State Bd. of Tax Com'rs,* (Ind.) 187 N. E. 882, 884, it is said:

"But here it is urged that the legislation can be justified under what Judge Cooley calls 'the police or equivalent power.' Commentators generally regard this type of legislation as designed and intended to discourage chain stores and encourage and protect local industry. We agree with this view as to the purpose of the Indiana statute, and will consider the question of its constitutionality upon that basis."

■ Plaintiff contends that the requirement of the payment of the license fees is confiscatory. The amount of the license tax does not indicate that the rates are so oppressive as to be arbitrary or confiscatory.

In *Fox v. Standard Oil Co.,* 55 S. Ct. 333, 79 L. Ed. —, we read:

"The tax now assailed may have its roots in an erroneous conception of the ills of the body politic or of the efficacy of such a measure to bring about a cure. We have no thought in anything we have written to declare it expedient or even just, or for that matter to declare the contrary. We deal with power only." See also *Hall v. State,* 217 Ala. 403 (116 So. 369, 58 A. L. R. 1333).

■ Appellant asserts that the emergency clause attached to ordinance No. 63550, which amended sections 5 and 7 of article XLV 3/4 of ordinance No. 40468, is void, and therefore the entire ordinance is void. We have devoted considerable attention to this emergency clause, but careful examination shows that this amendatory ordinance only changes sections 5 and 7 of article XLV 3/4 of ordinance No. 40468. The question is not devoid of a good deal of difficulty. Section 47 of the city charter requires that an emergency clause shall contain the statement that an emergency exists and specify with distinctness the facts and reasons, con-

stituting such emergency. The emergency clause is as follows:

"Inasmuch as this ordinance is necessary for the immediate preservation of the public health, peace and safety of the City of Portland, in this: That the provisions of the ordinance hereby amended are impracticable in operation and discriminatory in favor of certain store owners, which defects must be immediately corrected, therefore an emergency is hereby declared to exist and this ordinance shall be in force and effect from and after its passage by the Council." See *State v. Dalles City,* 72 Or. 337 (143 P. 1127, Ann. Cas. 1916B, 855).

However, as section 5, as amended, relates to the manner of collecting the license tax and leaves article XLV 3/4 of ordinance No. 40468 entirely intact, we fail to see that the question is very material. The city contends that the amendment to section 5, being a deletion of the following: "All licenses must be renewed within 30 days after date of expiration, and all applications for renewals must be accompanied by the license fees herein prescribed." That this requirement caused the applications to be made in mass and was inconvenient for the license bureau, and therefore the change was made for municipal convenience. Section 7, before the amendment, required store owners to pay separate license fees for certain different branches of business conducted. A drug store which carried electrical goods would be required to pay an electrical license in addition to $6, the store license. The druggist who carried curling irons, heating pads, etc., was required to pay about double the amount of the other druggist, and the section, as amended, avoids this burden to a considerable extent by providing that the store owner shall not be required to pay additional fees when the store license fee equals or exceeds what the other fee

or fees would amount to. While the emergency clause is questionable, under the circumstances it does not have vital effect on this case.

■ The construction of section 6 of ordinance No. 61451, providing for the fees to be paid, as placed by the city officials, is challenged by plaintiff. It contends that where there are more than 20 stores in one ownership, the ordinance makes no provision for the payment of any tax on the first 20 stores. The construction contended for by plaintiff would run counter to section 1 of the ordinance above quoted, making it unlawful for any person to operate a store "without first having obtained a license, as herein provided", and also there would be no compliance with section 6 of the ordinance as to the first 20 stores, which requires every person operating "any store or stores within this city shall pay an annual license fee or fees * * *". While the language of said section 6 is abbreviated, we think the meaning conveyed thereby does not warrant the contention of plaintiff.

■ It is alleged and claimed that the title of the original ordinance No. 40468, of which ordinance No. 61451 is an amendment, is not sufficient to include a revenue measure. The charter of the city is the organic law of the municipality and it bears the same relation to the ordinances of a city that the constitution of the state bears to the statute. An ordinance must be passed in the manner prescribed by the city charter: 2 McQuillin, on Munic. Corp. §§ 676 and 682.

Section 45 of the charter of Portland directs that "No ordinance except one making an appropriation shall contain more than one general subject," but there is no requirement that such subject shall be embraced

in the title, as indicated by the general rule. The ordinance is not invalid on account of its title.

■ It is argued that the ordinance violates the established public policy of the state of Oregon, as bills containing a similar provision to those of the ordinance have been introduced in the legislature, and have failed to pass. The policy of the state is shown by its constitution and enacted laws. The public policy of the state of Oregon is not indicated by measures which have been introduced in the legislature but have not been enacted into laws. The ordinance does not conflict with the purpose or spirit of the substantive laws of the state of Oregon: 49 C. J. 1073.

The briefs on the part of plaintiff contain a wealth of authorities which might be said to be somewhat analogous to the principle involved. To discuss all of the different cases cited would render this memorandum too lengthy.

The whole case is plainly portrayed by plaintiff's complaint. We do not think that any different result would be obtained upon a hearing or taking of testimony.

It follows that the demurrer to the complaint was properly sustained. The judgment of the circuit court is therefore affirmed.

KELLY and BAILEY, JJ., not sitting.