Argued and submitted June 28, 1979,
affirmed March 24, 1980, reconsideration denied May 1,
petition for review denied June 17, 1980 (289 Or 275)

CARLSON, et al,
*Appellants,*

*v.*

CITY OF PORTLAND, et al,
*Respondents.*

(No. 414-782, CA 12647)

608 P2d 1198

T. Leonard O'Byrne, Portland, and David T. Bryant, National Right to Work Legal Defense Foundation, Inc., Fairfax, Virginia, argued the cause for appellants. With them on the briefs was P. David Ingalls, Portland.

Henry H. Drummonds, Eugene, and Richard A. Braman, Portland, argued the cause and filed the brief for respondents.

Before Thornton, Presiding Judge, and Buttler and Joseph, Judges.

BUTTLER, J.

## BUTTLER, J.

Plaintiffs seek review of the summary judgment entered for defendants in this suit for declaratory relief in which plaintiffs asked for a declaration that the union security and "fair share" provisions of the collective bargaining agreements between Local 189, American Federation of State, County and Municipal Employees (the union) and the City of Portland (the city) are invalid. In addition to those declarations, the prayer is for injunctive relief and for repayment of all sums deducted from plaintiffs' pay as "fair share" payments to the union.

Plaintiffs are or were employees of the city who have not become members of the union. The union was the exclusive bargaining representative of the unit of city employees to which plaintiffs belonged, and entered into collective bargaining agreements with the city for the periods 1974-76 and 1976-78.[1] Both agreements contained union security provisions requiring that all bargaining unit employees become members of the union or pay his or her "fair share" of the costs of negotiating and administering the labor agreement. The 1974-76 contract permitted the city to deduct the fair share payments from the wages of employees; the 1976-78 agreement required that it do so.

The collective bargaining agreements were adopted by the enactment of city Ordinances No. 138637 and No. 142210 respectively. As a result of these labor agreements and ordinances plaintiffs were subject to fair share deductions during the period of both contracts. They did not agree to or authorize the deductions, except to the extent that it might be argued that any person who accepted employment during the existence of the agreements impliedly consented to them as a condition of employment.

---

[1] The contracts in dispute are now expired. If plaintiffs were to prevail, however, they could be entitled to a return of the fair share payments they were required to make. Therefore, this proceeding is not moot.

Plaintiffs contend that the union security and fair share provisions violate the city charter. Because both union security and fair share deductions are specifically allowed by state statute, ORS 243.672, plaintiffs contend that statute is unconstitutional as a violation of the "home rule" provisions of the state constitution. Finally plaintiffs contend on appeal that the union has failed to return all of their fair share payments which were not applied to expenses for negotiating and administering the collective bargaining agreement as required.

The trial court granted defendants' motion for summary judgment as to all five causes of action in plaintiffs' Supplemental Complaint, and denied plaintiffs' motion for summary judgment as to three of their five causes of action.

Our first inquiry is whether the action taken by the city is authorized by the city charter. *See State ex rel Haley v. City of Troutdale*, 281 Or 203, 209, 576 P2d 1238 (1978). The charter of the City of Portland gives the city broad powers. It is vested with "authority to perform all public and private services" and with "all governmental powers" except those expressly conferred on another governing body and subject to limitations prescribed by the constitution and laws of the state. (Section 1-102.) The authority to exercise the powers so granted is vested in the city council, which is specifically granted power and authority to "secure the protection of persons and property and to provide for the * * * peace, safety and good order of the city." (Section 2-105.) The city council is directed to "make such rules and regulations as may be necessary and proper for the efficient and economical conduct of the business of the city." (Section 2-303.) Finally, the charter provides that

"[a]ny restriction or limitation imposed on the authority of the council by charter provision, applies only as its language explicitly and necessarily requires. * * * The city has authority to carry out

general or special powers expressed or implied by charter, statute or general law, as the council finds necessary or convenient." * * * (Section 13-201.)

Under these broad powers the city may choose to engage in collective bargaining with representatives of its employees, and it has chosen to do so.

Plaintiffs contend, however, that the union security and fair share provisions of the collective bargaining agreements and ordinances adopting them are in conflict with specific provisions of the city charter. If this is so the charter would prevail in the absence of overriding constitutional and statutory mandates. *See Safeway Stores v. Portland,* 149 Or 581, 603, 42 P2d 162 (1935); *La Grande/Astoria v. PERB,* 281 Or 137, 576 P2d 1204, *aff'd on reh* 284 Or 173, 586 P2d 765 (1978).

The ordinances enacting the collective bargaining agreements in dispute contain similar clauses. No. 138637 provides in part:

"All employees covered by this agreement * * * shall * * * either (1) become and remain a member of the Union as a condition of continued employment or (2) tender to the Union his fair share of the cost of negotiating and administering the labor agreement, as a condition of continued employment * * *.

"* * * * *

"Fair share payments authorized by this article may be deducted by the Employer as provided by State law."

Ordinance No. 142210 contains the same clauses except the phrase, "as a condition of continued employment," does not appear in the union security clause, and the fair share provision requires that the city "shall" deduct the payments.

The first such conflict claimed by plaintiffs involves section 4-112, which provides in part:

"Removals and Investigations. No employe in the classified civil service who shall have been permanently appointed under the provisions of the chapter shall be removed or discharged * * * except for cause * * *."

It is plaintiffs' contention that the union security clause of the collective bargaining agreements allows, and in fact requires, that the city discharge employees for other than "cause."[2] They contend that failure to join the union, or to make fair share payments in lieu thereof, cannot, as a matter of law, constitute "cause" within the meaning of the charter. But that assumes the word "cause" as so used has a definite, inflexible meaning. The same section which uses the word provides that if a discharged employee demands an investigation and it is determined that the discharge was not in good faith "for the purpose of improving the public service," the employee is entitled to reinstatement. This provision suggests that "cause" may encompass any rule reasonably related to improving the public service.

The city may make reasonable rules for the conduct of its business under the powers granted in the charter, including rules it deems reasonable in improving the public service. Its employees are required to obey those rules so long as they are reasonable and applied in a nondiscriminatory manner. *See Stueve v. Everett,* 11 Or App 18, 500 P2d 491, *rev den* (1972). Here the city chose to enter into a collective bargaining contract

---

[2] The union security provision by itself indicates that an employee could be discharged for failure to join the union or make fair share payments. When read with the check off provision under which the city deducts the fair share payment the union contends there is no actual possibility that plaintiffs will be discharged because there is no way an employee may fail or refuse to make the payments. The fair share payments are deducted before plaintiffs receive their pay whether they like it or not. They are, therefore, not threatened with discharge for failure to do that which is out of their control. Because, however, the union security provision clearly adds a condition of continued employment, we treat it as though it would allow the city to discharge or remove plaintiffs for failure to make the payments required. If, for example, the charter expressly forbid the discharge of an employee for failure to make fair share payments, a check off provision could not cure the clear conflict with the charter.

[444]

with the union. Incidental to that decision it could reasonably determine that a union security agreement was beneficial to further peaceful employment relations and to the conduct of the city's business, thereby improving the public service. It did so here as an obligation of the contract; those provisions are permitted, but not required, by state statute (ORS 243.672). Rules imposed pursuant to that contractual undertaking are as much entitled to obedience as any other lawful rule or regulation imposed by the city.[3] For example, plaintiffs could not disregard the hours they were required to work merely because those work hours were negotiated as part of the collective bargaining agreement. Failure to obey legitimate rules and regulations could be "cause" for discharge.

Plaintiffs also contend that the required fair share payments violate the charter provisions protecting city employees from forced political contributions.[4] Plaintiffs are entitled to a return of any of their fair share payments which are not used to cover the costs of negotiating and administering the contract between the union and the city. They are not forced to contribute to the explicitly political activities the union may engage in. The contract so provides and that result is required by *Abood v. Detroit Board of Education*, 431 US 209, 97 S Ct 1782, 52 L Ed 2d 261 (1977).

[3] It may be, for example, that the city is required to make particular safety regulations in order to comply with insurance requirements. The fact that the regulations stem from a contractual obligation that the city has undertaken does not make the regulations any less valid or enforceable.

[4] Section 4-121 provides in part:

"* * * No person in the national public service or the public service of the state or any civil division thereof, including counties, cities, towns, shall directly or indirectly use his authority or official influence to compel or induce any person in the public service of the city to pay or to promise to pay any political assessment, subscription, or contribution. * * *"

Section 4-124 provides in part:

"* * * No person in the service of the city is for that reason under any obligation to contribute to any political fund or to render any political service, and no person shall be removed, reduced in grade or salary, or otherwise prejudiced for refusing to do so. * * *"

Plaintiffs argue, however, that requiring them to pay *anything* to the union violates the charter because a union is an inherently political organization. They ignore the nonpolitical function of the union in the collective bargaining process and the policing of the agreement. The political functions are required to be separated from the nonpolitical ones and the amounts paid by plaintiffs represent their aliquot share of the costs of negotiating and administering the collective bargaining agreement with the city. In theory, at least, plaintiffs benefit by the agreement, and the union is required by law to represent plaintiffs as well as those city employees who are union members in the bargaining unit. Plaintiffs are not making a contribution, but are paying for a service. The requirement that they pay their fair share of the costs of that service does not violate the city charter.

Plaintiffs' final contention is that there is a genuine issue as to a material fact raised by their second cause of action as to the *extent* that the fair share payments went for other than the costs of negotiation and amdinistration of the contract.

The union rebated to plaintiffs that portion of their fair share payments which the union determined to be allocable to political or ideological purposes. Plaintiffs were informed of the internal union procedures available for contesting the amount of the rebates. The checks were accepted by plaintiffs' attorney and plaintiffs cashed them. Upon accepting the checks, however, plaintiffs' attorney informed defense counsel that the rebates were considered to be only partial return of the amounts due plaintiffs.

With their motion for summary judgment defendants filed affidavits which stated that the plaintiffs had received as rebates all of their payments which would have gone for political or ideological purposes. The only affidavit filed by plaintiffs made no reference to the amounts received as rebates nor did it contest the amount received or even conclusorily state

[446]

that more was due them. Plaintiffs, however, argue that an issue of material fact was raised by the inclusion of the correspondence between counsel for the parties as an exhibit to one of the affidavits submitted by defendants. They point out that in this correspondence plaintiffs' counsel indicates that the rebates are being accepted as partial rebates only. It is clear, however, that plaintiffs' contention was that they were entitled to a full refund. When a motion for summary judgment has been made and supported by affidavits, ORS 18.105(4) requires the adverse party to "set forth specific facts showing that there is a genuine issue as to any material fact for trial." *See Pelege v. Chrysler*, 278 Or 223, 227, 563 P2d 701 (1977); *Gleason v. International Multifoods Corp.*, 282 Or 253, 257-58, 577 P2d 931 (1978); *Bevan v. Garrett*, 284 Or 293, 298-99, 586 P2d 1119 (1978). Plaintiffs set forth no facts tending to show that an issue as to a material fact was presented. Nor did they make a showing by affidavit or otherwise that further discovery was necessary to enable them to develop the facts necessary to respond. *See Gleason v. International Multifoods Corp., supra.* Summary judgment for defendants was appropriate.[5]

Affirmed.

---

[5] Plaintiffs' contention that the entire Public Employee Collective Bargaining Law, ORS 243.650 to 243.762, violates the constitutional protection of the City of Portland's home rule powers presents a non-issue. The city argues that its charter authorizes it to bargain collectively, and it has done so. *See LaGrande/Astoria v. PERB*, 281 Or 137, 576 P2d 1204, *aff'd on reh* 284 Or 173, 586 P2d 765 (1978); *cf. Medford Firefighters v. City of Medford*, 37 Or App 657, 588 P2d 95 (1979), *rev den* 285 Or 195 (1979).