Argued and submitted December 18, 1984, affirmed in part, reversed in part, and remanded May 22, AFSCME's reconsideration and Carlson's reconsideration denied August 23, Carlson's reconsideration on order awarding attorney fees allowed, order vacated December 18. See 77 Or App 49 (1985)
Both petitions for review on merits denied November 26, 1985 (300 Or 332)

# CARLSON et al,
*Respondents - Cross-Petitioners,*

*v.*

# AFSCME et al,
*Petitioners - Cross-Respondents.*

(C-166-81; CA A31372)

700 P2d 260

Henry H. Drummonds, Portland, argued the cause for petitioners - cross-respondents. With him on the briefs were Kulongoski, Heid, Durham & Drummonds, Portland.

David T. Bryant, National Right to Work Legal Defense Foundation, Springfield, Virginia, argued the cause for respondents - cross-petitioners. With him on the briefs were Hallmark, Griffith & Keating, Portland, and Gary V. Abbott, Portland.

Before Gillette, Presiding Judge, and Van Hoomissen and Young, Judges.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

This case arose from an unfair labor practice complaint filed with the Employment Relations Board (ERB) under the Public Employe Collective Bargaining Act (PECBA), ORS 243.650 *et seq.* Respondents seek judicial review of ERB's order which found that Metropolitan Employees Local 189 committed an unfair labor practice by spending a portion of complainants' "fair-share" dues for unauthorized purposes.[1] *See* ORS 243.650(16); 243.672(2)(a) and (c). Complainants, City of Portland employes who are not members of Local 189, cross-petition. They contend that ERB erred in holding that fair-share dues may be used to defray costs for services rendered by affiliate labor organizations, in limiting their remedy to a refund and in failing to award interest on fair-share dues improperly exacted or spent by the union. We affirm in part, reverse in part and remand.

Complainants' complaint alleges in relevant part:

"The charging parties are employees of the City of Portland. The respondent Local 189 is their exclusive representative under the Act. The other respondents are organizations affiliated with Local 189. The City of Portland and Local 189 have entered into a fair-share agreement which requires the charging parties to make a payment-in-lieu-of-dues to Local 189 which is equal to the dues paid by members of the organization. The charging parties are not and have not been members of Local 189 or its affiliated organizations. Portions of such payments are distributed by Local 189 to the other respondents. The charging parties object to the use of their payment-in-lieu-of-dues for any purposes other than collective bargaining, administration of the contract and grievance processing. The charging parties allege that Local #189 and its affiliated organizations spend portions of their payment for purposes other than collective bargaining, contract administration and grievance processing. They request that the

---

[1] ERB concluded in relevant part:

"3. No party other than Local 189 violated ORS 243.672(2)(c).

"Local #189 is the exclusive representative of the bargaining unit that includes the individual complainants. Therefore, it alone is responsible to assure that fair share funds are expended only for authorized purposes. It follows that the complaint against AFSCME, AFL-CIO, and against the DCTU must be dismissed."

Board determine the amount spent for these and other purposes and that, for the future, the charging parties' payment-in-lieu-of-dues be reduced to their pro rata share of the respondents' cost of collective bargaining, contract administration and grievance processing; and that, for the past, the excess payments they have been required to make be refunded to them."

The facts were largely stipulated. ERB concluded that the stipulated facts were sufficient for it to find that Local #189 had committed an unfair labor practice by using fair-share dues for unauthorized purposes:

"Stipulated Facts No. 5 and No. 8 give us enough evidence to infer reasonably that Local #189 kept and spent for unauthorized purposes some fair share funds derived from the Complainants' bargaining unit * * *."

ERB ordered that Local 189 "cease and desist from violating ORS 243.672(2)(c) by keeping and spending for unauthorized purposes fair-share funds" and that it "refund to all fair-share payers in the complainants' bargaining unit that percentage of the fair-share assessment paid by those fair-share payers that was spent for nonauthorized purposes * * *." Respondents contend that that order was error.

The legislature enacted PECBA in 1973. Public employes have the right to form, join and participate in the activities of labor organizations of their own choosing for the purpose of representation and collective bargaining with their public employer on matters concerning employment relations. ORS 243.662. Employes of an "appropriate bargaining unit," ORS 243.650(1), decide whether to organize for collective bargaining purposes and, when a decision is made to organize, who will act as their "exclusive representative." ORS 243.650(8). That exclusive representative has the obligation to bargain for *all* the employes in that unit, including those who do not join the labor organization. *See* ORS 243.650(8); 243.686(4); *see also Stines v. OSEA,* 287 Or 643, 601 P2d 799 (1979); *OSEA v. OSU,* 30 Or App 757, 567 P2d 1085 (1977). The union, in turn, has a responsibility for and duty of fair representation to *all* the employes. *See Coleman v. CSD,* 71 Or App 687, 691, 694 P2d 555 (1985). It is subject always to a standard of good faith and honesty of purpose in the exercise of its discretion. *See Abood v. Detroit Board of Education,* 431 US 209, 221 n 15, 224, 97 S Ct 1782, 52 L Ed 2d 261 (1977).

■ The exclusive representative may exact a "payment-in-lieu-of-dues" from nonmember employes of the bargaining unit pursuant to a "fair-share" agreement between the exclusive representative and the public employer. *See* ORS 243.650(10). ORS 243.650(16) provides:

> " 'Payment-in-lieu-of-dues' means an assessment to defray the cost for services by the exclusive representative in negotiations and contract administration of all persons in an appropriate bargaining unit who are not members of the organization serving as exclusive representative of the employes. The payment shall be equivalent to regular union dues and assessments, if any, or shall be an amount agreed upon by the public employer and the exclusive representative of the employes."

The dues paid by the nonmember employes represent their aliquot share of the costs of negotiating and administering the collective bargaining agreement.[2] The non-members are, at bottom, paying for a service. *Carlson v. City of Portland,* 45 Or App 439, 446, 608 P2d 1198, *rev den* 289 Or 275 (1980).

In *Abood v. Detroit Board of Education, supra,* the Supreme Court addressed the question whether a fair-share or "agency shop" agreement violated the First and Fourteenth Amendment freedom of expression and association rights of objecting nonmember public employes. Recognizing that such rights exist, the court held that the exaction of money is permissible insofar as the service charges collected by the union are used to finance union expenditures for the purpose of collective bargaining, contract administration and grievance adjustment. 431 US at 224-232. However, the use of such

---

[2] In *Abood v. Detroit Board of Education, supra,* 431 US at 221, the Supreme Court explained:

"The designation of a union as exclusive representative carries with it great responsibilities. The tasks of negotiating and administering a collective-bargaining agreement and representing the interests of employees in settling disputes and processing grievances are continuing and difficult ones. They often entail expenditure of much time and money. The services of lawyers, expert negotiators, economists, and a research staff, as well as general administrative personnel, may be required. Moreover, in carrying out these duties, the union is obliged 'fairly and equitably to represent all employees . . ., union and nonunion,' within the relevant unit. A union-shop arrangement has been thought to distribute fairly the cost of these activities among those who benefit, and it counteracts the incentive that employees might otherwise have to become 'free-riders'—to refuse to contribute to the union while obtaining benefits of union representation that necessarily accrue to all employees." (Footnote and citations omitted).

service charges for political and ideological purposes which are unrelated to collective bargaining and as to which an employe objects is unconstitutional. 431 US at 235-236. The court recognized that there would be difficult problems in drawing lines between collective-bargaining activities, for which contributions may be compelled, and ideological activities unrelated to collective bagaining, for which compulsion is prohibited.

> "The process of establishing a written collective-bargaining agreement prescribing the terms and conditions of public employment may require not merely concord at the bargaining table, but subsequent approval by other public authorities; related budgetary and appropriations decisions might be seen as an integral part of the bargaining process." 431 US at 236.

■ Petitioners first assign as error ERB's conclusion that it has jurisdiction to determine what expenditures of fair-share dues are authorized. ORS 243.650(16) originally provided that ERB would determine the amount needed by the exclusive representative to defray its cost of services in collective bargaining negotiations and contract administration. That created administrative difficulties, because ERB had to develop a factual record in each case. The legislature amended the statute in 1975. Or Laws 1975, ch 728, § 1; ORS 243.650. The amendment's legislative history indicates that its purpose was to prevent ERB from pre-determining the proper amount of any fair-share assessments. Now the public employer and the union fix an amount, not greater than the dues and assessment paid by union members, during contract negotiations. ORS 243.650(16). We find nothing in the legislative history of the 1975 amendment which suggests that ERB does not retain jurisdiction to investigate and to adjudicate the propriety of the assessment and expenditure of fair-share funds under ORS 243.650(16). ORS 243.672(1)(f) and (2)(c); *see Coleman v. CSD, supra,* 71 Or App at 691.

We next consider what the legislature meant when it stated that fair-share dues may be used "to defray the cost for services by the exclusive representative in negotiations and contract administration." That language was initially removed from the proposed 1975 amendment to ORS 243.650(16). It was reinserted later to ensure "accountability" in the expenditure of fair-share dues. *See* Minutes, SB 335, Senate Labor Committee, February 28, 1975.

ERB stated:

"Assessing the PECBA as a whole, it is clear that the Legislature recognized the necessity for a labor organization to engage in a broad range of activities in order to effectively represent employes in negotiations and contract administration. ORS 243.650(10) and (16) provide a system through which nonmembers may be required to pay for the union's services. While the amount of the fair share assessment is to be established through negotiations, the funds derived may lawfully be spent only for purposes of employe representation. Expenditures made by the union qua labor organization are made for purposes of employe representation. In other words, any expenditure related to those activities that the PECBA, expressly or by necessary implication, recognizes are appropriate for a labor organization may be defrayed by fair share funds."

ERB held that an expenditure of fair-share dues is authorized if it is "germane to," or "supportive of," negotiations or contract administration. *See Ellis v. Railway Clerks*, \_\_\_ US \_\_\_, 104 S Ct 1883, 80 L Ed 2d 428 (1984).[3]

Complainants agree with ERB's interpretation, provided that it is read narrowly to mean that nonmember employes' dues may be used only to defray the cost of services by the exclusive representative in *direct* negotiations and contract administration between the City and Local #189. Petitioners argue that ERB's interpretation is too narrow, because it potentially prohibits the use of fair-share dues for ideological or political purposes that are germane to or supportive of collective bargaining, and that the promotion of political causes, such as minimum wage or employment discrimination laws, is often the most effective way for a union to improve the terms and conditions of employment of the members of a bargaining unit.

---

[3] In *Ellis v. Railway Clerks, supra,* US at \_\_\_ (80 L Ed 2d at 442), the Supreme Court stated:

"When employees such as petitioners object to being burdened with particular union expenditures, the test must be whether the challenged expenditures are necessarily or reasonably incurred for the purpose of performing the duties of an exclusive representative of the employees in dealing with the employer on labor-management issues. Under this standard, objecting employees may be compelled to pay their fair share of not only the direct costs of negotiating and administering a collective-bargaining contract and of settling grievances and disputes, but also the expenses of activities or undertakings normally or reasonably employed to implement or effectuate the duties of the union as exclusive representative of the employees in the bargaining unit."

■ In *Ellis v. Railway Clerks, supra,* US at ___ (80 L Ed 2d at 447), the Supreme Court noted:

"The very nature of the free-rider problem and the governmental interest in overcoming it require that the union have a certain flexibility in its use of compelled funds. 'The furtherance of the common cause leaves some leeway for the leadership of the group.' *Abood,* 431 US at 222 [52 L Ed 2d 261, 97 S Ct 1782], quoting *International Machinists v. Street,* 367 US at 778 [6 L Ed 2d 1141, 81 S Ct 178] (Douglas, J., concurring)."

As long as the union's leadership acts to promote the cause that justified bringing the group together, the individual may not withdraw his financial support merely because he disagrees with the group's strategy. *Abood,* 431 US at 223.

■■ Whether or not a particular expenditure of fair-share dues supports a political or ideological cause, it is only authorized if it is used to defray the cost of services by the exclusive representative in negotiations and contract administration. ORS 243.650(16). ERB recognized that unions are involved in many activities. Some, but not all, are germane to or supportive of negotiations and contract administration. However, ERB's conclusion that fair-share dues may be spent on *any* activity that the PECBA explicitly or implicitly recognizes as proper for a labor organization to engage in is mistaken. Fair-share dues may not be spent on union activities that may be permissible under the PECBA but which are not in support of or germane to negotiations and contract administration. As the Supreme Court observed in *Abood v. Detroit Board of Education, supra,* line drawing is no easy task. Each expenditure must be separately examined. We shall not attempt that task here, because the factual record has not been fully developed due to ERB's bifurcation of the case.[4]

■ In reaching its conclusion about what expenditures are permissible under ORS 243.650(16), ERB looked to

---

[4] Early in the proceedings, the parties agreed to bifurcate the case. The legal issues would be resolved under the facts as stipulated. A factual record would then be developed to the extent necessary to determine which claimants were proper parties and which expenditures were authorized.

Oregon's "Little Hatch Act," ORS 260.432(1), for guidance. ERB concluded:

> "'There is one further restriction on the expenditure of fair share funds. The policy of the State of Oregon regarding forced 'political' contributions by public employes is stated in ORS 260.432(1):
>
>> 'No person shall attempt to, or actually, coerce, command or require a public employe to influence or give money, service or other thing of value to promote or oppose any political committee or to promote or oppose the nomination or election of a candidate, the adoption of a measure or the recall of a public office holder.'
>
> "It is obvious that expenditures for some of the 'political' activities listed in the statute could be made for 'labor organization purposes.' For example, it would be appropriate— considering only the provisions of the PECBA—for a union representing librarians to oppose the adoption of a measure to eliminate the public library system in a county. Obviously, such a measure would have a profound effect on the employment relations of the workers the union represents. It is equally obvious, however, that, if fair share funds were used in the election campaign, the union and the employer—through their fair share agreement—would have required a public employe to give money to oppose the adoption of a measure. In order to harmonize the provisions of the PECBA and ORS 260.432 we hold that fair share funds may not be spent for the purposes described in the latter statute." (Footnote omitted.)

In this context, we read ORS 260.432(1) to say that "no union" shall attempt to do any of the proscribed acts. Respondents argue that, as a general law, ORS 260.432(1) was not intended to override the specific authorization for use of fair-share money contained in ORS 243.650(16).[5] We agree. As relevant to the issue here, ORS 260.432 is the general law, *see Williams v. City of Astoria,* 43 Or App 745, 751, 604 P2d 411 (1979) *rev den* 288 Or 667 (1980), and ORS 243.650(16) is the specific law. The latter permits the expenditure of fair-share

---

[5] Complainants rely on *Carlson v. City of Portland, supra.* In *Carlson,* city employes who were nonmembers of the union objected to a "fair-share" provision in their collective bargaining agreement contending that it violated a city charter provision prohibiting compelled political contributions. Citing *Abood v. Detroit Board of Education, supra,* we held that the objecting employes were not required to contribute to the "explicitly political activities the union may engage in." 45 Or App at 445.

dues to defray the cost of services by the exclusive representative in negotiations and contract administration. We find no conflict between the statutes. To the extent that ERB has attempted to superimpose the limitations of ORS 260.432(1) on the authority conferred by ORS 243.650(16), ERB erred.

Petitioners' final assignment of error raises several issues concerning ERB's conclusions that it was not necessary for complainants to exhaust their internal union remedies before filing their unfair labor practice complaint, that complainants need not notify the union of their objection to specific expenditures prior to filing an unfair labor practice complaint and that the union must make a refund to *all* fair-share employes in the bargaining unit, including those not parties to the complaint.

■ ORS 243.672(2)(c) makes it an unfair labor practice for a union to refuse or fail to comply with any provision of ORS 243.650 to 243.782. The statute does not require exhaustion of internal union remedies or objection to specific expenditures. We find no error.[6]

■ ERB ordered that Local 189 "refund to all fair-share payers in complainants' bargaining unit that percentage of the fair-share payment spent for nonauthorized purposes * * *." ERB exceeded its jurisdiction in that regard. Complainants are the only parties seeking relief; they alone are entitled to relief.

■ On this record, we are unwilling to uphold ERB's conclusion that Local #189 committed an unfair labor practice. That determination is best reserved until development of the evidence is complete, particularly in the light of petitioners' contention in this court that they did not stipulate to

---

[6] In *Abood v. Detroit Board of Education, supra,* 431 US at 241, the Supreme Court noted:

"[T]he employees here indicated in their pleadings that they opposed ideological expenditures of *any* sort that are unrelated to *collective bargaining.* To require greater specificity would confront an individual employee with the dilemma of relinquishing either his right to withhold his support of ideological causes to which he objects or his freedom to maintain his own beliefs without public disclosure. It would also place on each employee the considerable burden of monitoring all of the numerous and shifting expenditures made by the Union that are unrelated to its duties as exclusive bargaining representative." (Emphasis in original.)

certain facts ERB relied on. Petitioners did stipulate that complainants would have received a rebate under the AFSCME constitution. However, that finding does not necessarily support ERB's conclusion that Local #189 misused fair-share dues, because AFSCME's constitution requires a rebate of *all* political and ideological expenditures, whether or not they are germane to or supportive of collective bargaining. Although complainants may be entitled to a rebate under AFSCME's constitution, it does not necessarily follow that Local #189 violated ORS 243.650(16).

■ On their cross-petition, complainants first contend that ERB erred in holding:

> "[T]he fair share assessment authorized by the Legislature is not limited in amount by the expenditures of a union and its affiliates for services to the bargaining unit from which the assessment is derived."

They argue that neither PECBA nor the First Amendment permit expenditure of fair-share dues outside of the non-member employes' bargaining unit. Petitioners argue that local unions typically affiliate with state and national parent organizations and that the services those organizations provide are germane to, or supportive of, collective bargaining at the local level.

ERB reasoned that the language of ORS 243.650(16) does not prohibit such expenditures, that the legislature was aware of the organizational structure and operation of local, state and national unions when it enacted the statute, that local unions often depend on their state and national affiliates to provide financial and staff support and that, when ORS 243.650(16) was amended in 1975, the only interpretation of the provision that the legislature had before it was a Public Employment Retirement Board decision, *In the Matter of Port Umpqua Education Assocation's Request,* Case No. C-276, 1 PECBR 312 (1975), upholding the use of fair-share dues by a local union in support of state and national affiliates.

Local unions may address issues of state or national concern to promote their legitimate local objectives. They may do so directly, or indirectly through their state and national affiliates. They have some latitude in determining the best means of promoting the legitimate "negotiations and contract

administration" objectives of the bargaining unit. *See Robinson v. State of New Jersey,* 741 F2d 598 (3d Cir 1984); *Champion v. State of California,* 738 F2d 1082 (9th Cir 1984). Of course, financial contributions to affiliates are permissible only insofar as they comport with the statutory directive. *See* ORS 243.650(16). We find no error.

Complainants' second assignment of error concerns ERB's rulings on the proper procedure for collecting and rebating fair-share dues. ERB held:

> "The discussion in the paragraph above contemplates a system of refunds to compensate for fair share over-payments. We believe this is allowable under our statute and the Constitution. We recognize that a union may not reasonably know in advance what percentage of its budget will be devoted to unauthorized (for fair share funds) purposes during the life of a fair share agreement. We also believe, however, that equity demands that a fair share payer not be deprived of money that is legally his any longer than is practically necessary. For this reason, a union must give back any over-payments as soon as it has information sufficient to determine the appropriate amount of the refund. In addition, if this determination is made before the term of the fair share agreement has run (which we expect will be the case in most instances), the union should request a commensurate reduction in the fair share assessment for the remainder of the contract term. A reasonable estimate—based on the union's budget, past practices, and planned programs—will suffice as an 'appropriate amount' for the refund, because '[a]bsolute precision in the calculation of such proportion is not, of course, to be expected or required; we are mindful of the difficult accounting problems that may arise.' *Railway Clerks v. Allen,* 373 US 113, 53 LRRM 2128, 2132 (1963)."

ERB also held that it was not necessary for the union to pay interest if it acted quickly to refund any overpayment, because it had done nothing more than has been the practice of most unions in the state for several years.

Complainants argue that ERB's rebate order is the "pure rebate approach" found inadequate in *Ellis v. Railway Clerks, supra,* that a proper approach would be to require the union to prove that certain expenditures are chargeable to nonmember employes before making the assessment and that the payment of interest is necessary to make them whole. In *Ellis,* the Supreme Court held:

"By exacting and using full dues, then refunding months later the portion that it was not allowed to exact in the first place, the union effectively charges the employees for activities that are outside the scope of the statutory authorization. The cost to the employee is, of course, much less than if the money was never returned, but this is a difference of degree only. The harm would be reduced were the union to pay interest on the amount refunded, but respondents did not do so. Even then the union obtains an involuntary loan for purposes to which the employee objects.

"The only justification for this union borrowing would be administrative convenience. But there are readily available alternatives, such as advance reduction of dues and/or interest-bearing escrow accounts, that place only the slightest additional burden, if any, on the union. Given the existence of acceptable alternatives, the union cannot be allowed to commit dissenters' funds to improper uses even temporarily. A rebate scheme reduces but does not eliminate the statutory violation." US at ___ (80 L Ed 2d at 439).

*See Abood v. Detroit Board of Education, supra,* 431 US at 237-242.

■■■■■■ We conclude that, if a union knows in advance that a portion of fair-share dues will be used for purposes not germane to or supportive of collective bargaining negotiations and contract administration, it must reduce the fair-share dues *pro-rata* in advance. If it anticipates that any further amount may need to be refunded, that amount must be placed in an interest-bearing account and rebated, with the interest earned, as soon as the impropriety of the expenditure of fair-share dues is determined. Here, any amount of fair-share dues that ERB concludes on remand was used unlawfully must be refunded with interest at the statutory rate. To that extent, ERB's order was erroneous.

Affirmed in part; reversed in part; and remanded for proceedings not inconsistent with this opinion.